**First National Bank of Hoopeston, for the use of The Firemen's Fund Ins. Co., The Ins. Co. of North America and The Traders Ins. Co., v. The Lake Erie & W. R. R. Co.**

1. RAILROAD COMPANIES—*Where Not Liable for Fires.*—In order to render a railroad company liable for damage done by fire escaping from its engines, its negligence in permitting fire to escape must consist in the failure to employ proper means and appliances to prevent it as far as is reasonably practicable, or in the proper handling of such means.

22    APPELLATE COURTS OF ILLINOIS.

VOL. 65.] First Nat. Bk. of Hoopeston v. L. E. & W. R. R. Co.

2. SAME—*Construction of the Statute.*—The act of March 29, 1869, makes the fact that a fire is communicated by a locomotive engine while upon or passing along a railroad, *prima facie* evidence to charge the company with negligence; but as no device is known by means of which, however managed, the escape of fire can be absolutely prevented, such *prima facie* evidence may be rebutted and overcome by sufficient proof that there was no negligence, either in the employment of improper means and appliances or in the improper handling of such means.

3. EVIDENCE—*Of Fire Escaping from Other Engines—Rebuttal.*—In an action for damages caused by fire escaping from an engine, the fact that fire escaped from other engines of the company, although of the same make and equipped with the same appliances to prevent such escape, is not competent to rebut the direct and positive evidence of the actual condition and management of the particular engine on the occasion in question.

**Trespass on the Case.**—Damage from fires. Error to the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the November term, 1895. Affirmed. Opinion filed May 16, 1896.

LAWRENCE & LAWRENCE, E. WINTER, D. J. SCHUYLER, and C. W. GUMFIELD, attorneys for plaintiff in error.

It appearing from the evidence of the defendant that all its engines were equipped with the same appliance to prevent the escape of fire and the same size and mesh netting, it was competent for plaintiff to show in rebuttal that other fires had been set out by defendant's engine at other times in the immediate vicinity of the elevator both before and after it was destroyed. The Grand Trunk R. R. Co. v. Richardson et al., 91 U. S. 470; Piggott v. Eastern Counties R. R. Co., 3 Manning, Granger & Scott, 228; Ill. Cent. R. R. Co. v. McClelland, 42 Ill. 358; Field v. N. Y. C. R. R., 32 N. Y. 339; B. R. R. v. Rogers, for use, etc., 76 Va. 443; A. & E. R. R. v. Gantt, 39 Md. 115; Henry v. So. Pac. R. R. Co., 50 Cal. 176; Hoyt v. Jeffers, 30 Mich. 181; Haseltine v. Concord R. Co., 35 Am. & Eng. R. R. Cases, 236; M. P. R. Co. v. Kincaid, 29 Kan. 654; St. Joseph & D. C. R. Co. v. Chase, 11 Kan. 47; Longbaugh v. V. C. & T. R. Co., 9 Nev. 271; Gulf C. & S. Fe. Ry. Co. v. Holt, 11 Am. & Eng. Ry. Cases, 72; P. C. & St. L. R. R. Co. v. Noel, 77 Ind. Rep. 110; Bevier v.

Del., etc., R. R. Co., 13 Hun 254; Atchison, etc., R. Co. v. Stanford, 12 Kan. 354; Butcher v. Vacca Valley & Clear L. R. R. Co., 22 Am. & Eng. Cases, 644; Diamond v. N. P. R. Co., 29 Am. & Eng. Ry. Cases, 117; Moxley v. C. A. Ry., 32 Id. 304; L. E. & W. Ry. Co. v. Cruzen, 29 Ill. App. 212.

The highest degree of care is required from railroad companies. Bass v. C., B. & Q. R. R., 28 Ill. 19; Ill. Cent. R. R. Co. v. Mills, 42 Ill. 407; R. R. Co. v. Rogers, 76 Va. 443; L. E. & St. L. R. R. v. Black, 54 Ill. App. 84; Poeppers v. M., K. & T. Ry. Co., 67 Mo. 715; Kendrick v. Towle, 25 Am. & Eng. Ry. Cases, 473; Jackson v. Chi. & N. W. R. R., 31 Iowa 176.

W. J. Calhoun and H. M. Steely, attorneys for defendant in error.

If a railroad company uses most approved appliances to prevent escape of fire and sparks, and keeps the same, and the locomotive on which it is placed, in constant repair, and the locomotive is properly operated by a competent, careful, skillful and prudent engineer, and notwithstanding these precautions fire or sparks escape and ignite fire outside the right of way, the company is not liable. T. P. & W. Ry. Co. v. Pindar, 53 Ill. 447; C. & A. R. R. Co. v. Quaintance, 58 Ill. 389; T. W. & W. Ry. Co. v. Larmon, 67 Ill. 68; C. & A. R. R. Co. v. Pennell, 94 Ill. 448; C. & A. R. R. Co. v. Smith, 11 Ill. App. 348; I., B. & W. R. R. Co. v. Craig, 14 Ill. App. 407.

It is not an insurer against sparks escaping and is not required to purchase and test every newly invented device. It is sufficient that the device in use is one tested, known and approved. T. W. & W. Ry. Co. v. Corn, 71 Ill. 494; I. C. R. R. Co. v. Mills, 72 Ill. 407.

Persons owning or occupying buildings adjoining a railroad right of way are presumed to know the hazards incident to the operation of a line of railroad in such close proximity, and to have assumed some of the hazards. T. W. & W. Ry. Co. v. Larmon, 67 Ill. 68; T. W. & W. Ry. Co. v. Maxfield, 72 Ill. 95; C. & A. R. R. Co. v. Pennell, 94 Ill. 448.

24    APPELLATE COURTS OF ILLINOIS.

VOL. 65.]    First Nat. Bk. of Hoopeston v. L. E. & W. R. R. Co.

Evidence of other fires set by the particular locomotive may be given, but evidence that some of the company's other locomotives had previously or subsequently scattered fire is not admissible unless it is also shown that the locomotive which caused the fire was one of them, or was similar in construction, state of repair, manner of equipment or management.    Gibbon v. W. V. R. R. Co. (Wis.), 13 Am. & Eng. R. R. Cases, 469; Boyce v. Cheshire R. R. Co., 42 N. H. 97; Hubbard v. R. R. Co., 39 Me. 506; Smith v. R. R. Co., 37 Mo. 287.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This action was brought in the name of the bank, for the use of the insurance companies, against the defendant in error, for the burning of its elevator, which was insured by said companies.    Having paid the loss, they became subrogated to the rights of the bank, if any, against the railroad company to whose wrongful negligence the fire and loss are here charged.

Defendant's road, running east and west through Hoopeston, is there crossed by the Chicago & Eastern Illinois. The elevator was located on a lot adjoining its right of way on the south, from five to eight hundred feet west of the crossing, and the station was in the southwest angle made by the crossing.

On the 31st of August, 1892, the elevator was destroyed by fire, claimed to have been communicated by sparks from the locomotive of a local freight train of defendant, going east.

The declaration contained three counts.    By the first it charged, generally and simply, that while the locomotive under its control was passing upon the road along said property, sparks and brands escaped from it through the negligence of defendant, and set fire to the building.    In the second, the negligence alleged was in the overloading of the engine.    And in the third, it is the construction of the road bed with such high grades as to cause the engines in their

operation to haul freight trains up them to emit sparks and brands, averring the location of the elevator on one of these grades.

The verdict, being upon the general issue, was for the defendant; upon which, after refusing a new trial, the court rendered judgment, and the record is brought here by writ of error.

It is quite a voluminous record, containing the testimony of fifty witnesses—twenty-one on one side and twenty-nine on the other. A review of it in detail is probably not expected.

It appears that at a point some 2,000 feet west of the elevator the track, by a considerable descent to the east, reaches a level which is maintained to a point about 250 feet west of it, where it rises for a distance of 300 feet by a grade of twenty-six to the mile, and thence on east at nearly fifty for a distance of 2,700, thence on a level about 1,000, and thence, by a grade of thirty-seven feet to the mile, 1,200 feet to the summit.

The train came up to the station about noon, where the brakes were set, the engine detached and the cars held until the way freight was unloaded, when the brakes were taken off and they were allowed to back down to a water tank about midway on the level between the west and east grades first mentioned—say 1,000 feet west of the elevator. After switching about the station an hour or so the engine was backed down to the train; and having there taken water and put on fresh coal, it started east and pulled the train about half way up the increased grade east of the station, where, from some cause not shown, it was stalled. It then backed down past the station, elevator and tank and up the west grade, whence, with the advantage of that decline, it again started east and passed through. It was on this last run east that the fire is claimed to have been set.

That it was communicated by this locomotive engine, the plaintiff, to be entitled to recover, was bound to establish by a preponderance of the evidence. Though such proof would not necessarily establish its right to recover, the

26    APPELLATE COURTS OF ILLINOIS.

VOL. 65.] First Nat. Bk. of Hoopeston v. L. E. & W. R. R. Co.

want of it would be conclusive against it, whatever may have been the negligence on the part of the defendant. Upon that question the evidence was wholly circumstantial and clearly conflicting. How the jury found upon it we do not know. There was no special finding.

But assuming it was for the plaintiff, we are satisfied they could not have found it was because of negligence in the construction of the road bed or in overloading the engine. All the evidence of negligence in these particulars consisted, as to the first, in the statement of the levels and grades as above given, and as to the second, of the amount of the load, the rate of the engine and the fact that on the second run east it was stalled—the most of which was put in by the defendant. But it was fully shown that the road bed was properly constructed, that grades as long and steep as these are quite common and longer and steeper ones not infrequent on well built roads in that section of the country; that they are not regarded as improper or difficult, and that because of the natural surface at this place it is impracticable to build and maintain a railroad there without them; and also that this engine, in good order and properly handled, would easily haul over them a train considerably heavier. The testimony on both these points to the effect stated was abundant, clear, largely disinterested and wholly uncontradicted. Plaintiff therefore could not rightfully recover under the second or third count, even though the fire had been communicated from the engine and by negligence of the defendant in some other particular.

The first rests upon the mere allegation that the injury complained of was occasioned by fire communicated by the engine while passing along the railroad and under control of the defendant. It is not alleged, nor is it claimed upon the evidence, that it was set within the right of way through combustible material wrongfully left there by the defendant. The statute, however, makes the fact alleged evidence of itself to charge the defendant with negligence. R. S., Ch. 114, p. 103 (Hurd's Ed. of 1893, p. 1122.) But as no device is known by means of which, with whatever management,

the escape of sparks or brands can be absolutely prevented, it is made only "full *prima facie evidence*" so to charge. The negligence referred to must therefore consist in the employment of improper means and appliances to prevent it as far as is reasonably practicable, or in the improper handling of such means, and the *prima facie evidence* may be rebutted and overcome by sufficient proof that there was no negligence in either of these respects. C. & A. R. R. Co. v. Quaintance, 58 Ill. 389; same v. Pennell, 94 Id., and cases cited on p. 454.

The engine was a Brooks Standard, of thirty-five tons weight, seventeen by twenty-four inch cylinder, front extension, straight stack, steel diaphram, and three by three netting. It had recently been rebuilt, was thoroughly inspected two or three days before, and again two or three after the fire, without any repair in the interval, and found in first class condition throughout. This equipment was as good as any in use, or known, for preventing the escape of fire. The engineer was competent, skillful and careful; of sober habits and sound judgment. He was examined fully as to his method in handling his machine on the run upon which it is claimed the injury was done; which was approved as reducing to the lowest the chances of such injury.

These were the facts as shown by a very clear preponderance of the evidence, and they established the defense indicated by the authorities cited. Appellant introduced only two experts, each of whom was of opinion that the handling of the engine as stated was unskillful and improper. But it was in answer to hypothetical questions which assumed a run starting from a point one or two hundred feet from the foot of the grade, an assumption based on the engineer's statement that the tank (from which he started on the first run) was about one hundred feet distant from it. If he meant "hundred," it was a mistake, as all the other witnesses say it is about a "thousand." But the run in question was made from a point two thousand feet or more and commenced with a down grade. It was to this run that

28    APPELLATE COURTS OF ILLINOIS.

VOL. 65.] First Nat. Bk. of Hoopeston v. L. E. & W. R. R. Co.

the method applied, which was emphatically declared to have been judicious by many experts, and disapproved by none.

Upon the evidence actually introduced, then, the case on the merits was clearly for the appellee, even upon the concession, which was not made, that the fire was communicated from the engine.

But it is complained that the court erred as to the law in several particulars. First and chiefly in excluding the testimony of John Bock, offered in rebuttal. He was asked: "Have you ever at any time before the burning of this elevator seen any fires along the line of the Lake Erie & Western Railroad, on their right of way, communicated from the engines of the road?" to which an objection was sustained. "Q. I'll ask you if, at any time during the summer of 1892, just prior to or just after the fire, you noticed other fires along the right of way or near the property which has been referred to here in evidence as Mr. Carrick's warehouse, or any other places in the vicinity of this elevator, along the east grade that has been referred to in the evidence?" Objected to. The Court: "You don't propose to prove it was the same engine?" Counsel: "No sir." And the objection was thereupon sustained. Mr. Riley, superintendent of equipment of appellee's road, after describing the netting used on this engine to prevent the escape of fire, had said: "It is the same brand and the same mesh netting on all our engines;" and it is upon that statement alone that the right to put the excluded questions is claimed.

On the case in chief no evidence was introduced as tending to prove, nor was it claimed that the injury complained of was caused by fire communicated through combustible material on or along the right of way. The claim was, and the evidence for appellant tended to show, that it was by sparks or brands thrown directly upon the roof of the elevator, and the defense was directed and confined to a denial of that claim and to proof that if true, the company had done all that the law or its duty required to prevent it. The

first rested upon circumstances proved as tending to show that the fire originated within the building, and the other upon positive evidence of the actual kind and condition of the engine and its equipment for preventing the escape of fire, at the time, and of the manner in which the engine was actually managed on the occasion in question, with expert testimony that these were in every respect all that the law or appellee's duty required.   Now we are unable to see how the fact, if it was a fact, that on other occasions, before and after, other engines of appellee equipped with "the same brand and the same mesh netting," but which for aught that was shown or offered to be shown may have been either in bad order or badly handled, could rebut any evidence introduced upon either branch of the defense.

The cases relied on to support the point of appellant stand upon materially different facts, and consequently a different principle.   Thus in Grand Trunk R.R. Co. v. Richardson, 91 U. S. 454, cited as a leading case on the subject, it appeared that the fire was communicated to the plaintiff's lumber yard and mill from a bridge of the railroad company, and that no particular engine was claimed to have caused it, several having crossed the bridge not long before it took fire.   Plaintiff was permitted, in rebuttal and against objection, to prove that at various times during the same summer before the fire occurred, some of defendant's locomotives scattered fire when going past the mill and bridge, without showing that either of those claimed to have set the one in question was among the number or similar in their make, state of repair or management.   The court held it to be indirect evidence, if evidence at all, that although there were some cases to the contrary, it seemed to be generally held admissible as tending to raise some probability, in the absence of proof of any other known cause, that some of the engines of the defendant set the fire; that whether it was or was not competent on rebuttal it was competent in chief, and therefore whether it was or was not strictly admissible on rebuttal—the intimation plainly being that it was not—its admission was within the discretion of the

30    APPELLATE COURTS OF ILLINOIS.

VOL. 65.] First Nat. Bk. of Hoopeston v. L. E. & W. R. R. Co.

court, which therefore could not be reviewed. If for that reason it was not reviewable, then its rejection, as in this case, was alike discretionary and not reviewable.

The L. E. & W. R. R. Co. v. Cruzen, 29 Ill. App. 212, was of like character. Plaintiff recovered for damages by four fires occurring at different times from February 28th to August 1st of the same year, some set within and one or more outside the right of way, by different engines, none of which were identified. Defendant denied that it set either, and as to such as were or was set outside its right of way further claimed it "had done its duty in providing sufficient spark arresters which were in use on all its engines," and offered evidence tending to prove that they were better than another in general use called "the extension front end;" that they "would so break up and confine the sparks that fire would not be carried and set more than a distance of twenty-five feet, if in good order and properly managed." It was to meet this that evidence was admitted to show that "these engines did throw a much greater distance, and were habitually setting fire to the right of way and adjoining premises." The court held it competent as tending to show "a general want of safety, and that if in good order and skillfully managed, as was claimed, there was some radical defect in the contrivance."

In I. C. R. R. Co. v. McClelland, 42 Ill. 355, there was no proof as to the equipment or handling of the particular engine which was claimed to have thrown sparks or brands upon the premises of the plaintiff, one hundred feet from the track. It was proved, as a general fact, that the company had in use on their engines the most approved apparatus known for arresting sparks, but no witness stated that this one had it. It was testified, however, by some of its engine drivers, that an engine so provided will not throw sparks one hundred feet. Three witnesses called in rebuttal testified that in the year this fire occurred they had seen engines of this company throw sparks over one hundred feet, and the court held that as rebutting testimony this was proper. It was directly counter to what had been intro-

duced by defendant as tending to prove that this particular engine was equipped with a proper spark arrester.

In our opinion these cases lend no support .to the proposition here contended for, that direct and positive evidence of the actual condition and management of this particular engine on the occasion in question may be rebutted by evidence as to others, under other drivers and on other occasions; and the ruling of the court below was proper.

Four of the instructions asked by the appellant were refused. Of these the first assumed a fact of which evidence was expected to be, but was not, admitted, being the matter just above referred to; the second made negligence a question of law and assumed as a fact that the engine was overloaded, which was contrary to all the proof on that question; the third was unmeaning, being that negligent management was negligence; and the fourth was substantially given in others. For these reasons, respectively, they were properly refused.

For the defendant an instruction was given that as to the specific negligence charged in the third count, being in the construction of the road bed, the burden of proof was upon the plaintiff. Whether this was or was not error is unnecessary to decide, since the defendant introduced all the evidence there was on that subject and it all tended to prove affirmatively that there was no negligence in this respect.

Perceiving in the record no reason for reversing this judgment, it will be affirmed.