Cleveland, C., C. & St. L. Ry. Co. v. Druien.

---

CASE 27—ACTION BY JAMES L. DRUIEN AGAINST THE CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RY. CO. FOR DAMAGES IN SHIPPING LIVE STOCK.—MAY 12.

# Cleveland, C., C. & St. L. Ry. Co. v. Druien.

APPEAL FROM JEFFERSON CIRCUIT COURT, COMMON PLEAS BRANCH, FIRST DIVISION—EMMET FIELD, CIRCUIT JUDGE.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS. REVERSED.

CARRIERS—CONTRACT—MADE IN FOREIGN STATE—DAMAGE BY FIRE— LIMITATION OF LIABILITY—ENFORCEABLE IN THIS STATE.

Constitution, sec. 196, declares that no common carrier shall be permitted to contract for relief from its common-law liability. A carrier contracted in Illinois to carry freight into Kentucky, and the contract relieved the carrier from liability for damages caused by fire not arising from its negligence, which limitation of common law liability was valid under the laws of Illinois, and the freight, while in transit in Illinois, was destroyed by an accidental fire. HELD, that in an action in Kentucky against the carrier for the destruction of the freight the limitation of liability in the contract was a good defense.

HUMPHREY, BURNETT & HUMPHREY, FOR APPELLANT.

POINTS AND AUTHORITIES CITED.

1. The contract of carriage having been made in Illinois, and

the contract having been partly performed in that State, the law of Illinois must govern the transaction. McDaniels. v. Chicago & N. W. Ry. Co., 24 Ia., 412; Hazel, &c., v. Chicago, M. & St. P. R. R. Co., 82 Ia., 477, 48 N. W., 926; Western & A. R. R. Co. v. Exposition Cotton Mills, 81 Ga., 522, 7 S. E., 916; Ryan v. Missouri, Kansas & Texas R. R. Co., 65 Tex., 13, 23 Am. & Eng. R. R. Cases, 704; Talbert v. Merchants' Despatch Transportation Co., 41 Ia., 247, 20 Am. Rep., 589; 5 Am. & Eng. Ency. of Law (2d Ed.), 302; O'Regan v. Cunard Steamship Co., 160 Mass., 356, 35 N. E., 1070; Tecumseh Mills v. L. & N. R. R. Co., 22 Ky. Law Rep., 264; O. & M. R. Co. v. Tabor, 98 Ky., 504.

2. Under the laws of Illinois this contract was valid. Adams Express Co. v. Haynes, 42 Ill., 89; Anchor Line v. Knowles, 66 Ill., 150; Merchants Despatch Co. v. Theilbar, 86 Ill., 71; Merchants Despatch Co. v. Leysor, 89 Ill., 43; Black v. Wabash Ry. 111 Ill., 351; Brown v. Louisville & Nashville R. R. Co., 36 Ill. App., 140; First National Bank of Hoopeston v. Lake Erie R. R., 65 Ill. App., 21; Oppenheimer v. United States Express, 69 Ill., 68; York Co. v. Central R. R., 3 Wall., 107; Cau v. T. & P. R. R. Co., 113 F. R., 91; 6 Cyclopedia of Law and Procedure, 392; Louisville & Nashville R. R. Co. v. Brownlee, 14 Bush, 593.

3. Section 196, when properly construed does not apply to this case. Louisville & Nashville R. R. Co. v. Eubank, 184 U. S., 27; Missouri Pacific Co. v. Sherwood & Co., 19 S W 455; 84 Texas, 125, 17 L. R. A., 643.

4. To apply the second clause of section 196 to a shipment like the one here involved would be to contravene the Constitution of the United States giving power to Congress to regulate commerce between the States. Champion v. Ames (Lottery Case), 188 U. S., 344; L. & N. v. Eubank, 184 U. S., 42; Chicago Railway v. Solan, 169 U. S., 133.

5. The case should be reversed, with instructions to reinstate the judgment upon the first verdict. Richards v. L. & N. R. R. Co., 20 Ky. Law Rep., 1481; L. & N. R. R. Co. v. Ricketts, 21 Ky. Law Rep., 664; Crowley v. L. & N., 21 Ky. Law Rep., 1434.

6. In addition to the cases cited, we call the attention of the court to the following: Pennsylvania R. R. v. Hughes, 24 Sup. Ct. R., 132; Hughes v. Pennsylvania Co., 51 Atl., 990; S. C., 202 Pa., 222; Hudson v. Northern Pacific Co., 92 Ia., 231; S. C., 54 A. S. R., 550; Davis v. C., M. & St. P., 93 Wis., 470; S. C., 57 A. S. R., 935; Meuer v. C., M. & St. P., 5 South Dak., 568; S. C., 49 A. S. R, 898; McDonald v. Grand Trunk Ry., 59 L. R. A., 448; S. C., 52 Atl., 982; L. & N. v. Whitlow's Adm'r., 105 Ky., 3; L. & J. Ferry Co. v. Kentucky, 188 U. S., 385.

Cleveland, C., C. & St. L. Ry. Co. v. Druien.

We cite these cases to show:

1. That even if the law of Illinois is not to govern this case because it is the law of the place of contract, yet it is the law of the place where the accident happened, and the rule in reference to torts as well as contracts is that they are governed by the *lex loci.*

2. That to give to Section 196 of the Constitution any effect in this case would be to give to the law of the State of Kentucky an extra territorial force, which would be to deprive the defendant of its property without due process of law and to deny to it the equal protection of the laws.

FAIRLEIGH, STRAUS & FAIRLEIGH AND GEO. S. AND JOHN A. FULTON, FOR APPELLEE.

### POINTS AND AUTHORITIES.

1. The contract limiting the liability of the carrier is against the public policy of the State of Kentucky, and will not be enforced by the courts of Kentucky, whatever may be the law of the place where the contract was made. Kentucky Constitution, Section 196; 9 Cyclopedia of Law and Procedure, 669; Chatenay v. Brazilian Sub. Tel. Co., 1 Q. B., 79; Rousillon v. Rousillon, 14 Ch. D., 357; Armstrong v. Best, 112 N. C., 59; Varnum v. Camp, 13 N. J. L., 326; Dearing v. McKinnon Dash, etc., Co., 165 N. Y., 78; Pope v. Hanke, 115 Ill., 617; Wight v. Rindskopf, 43 Wis., 344; Oscanyan v. Winchester Repeating Arms Co., 103 U. S., 261; Clark v. Tanner, 100 Ky., 275; Rogers v. Rains, 100 Ky., 295; Chicago, Burlington & Quincy Railroad Co. v. Gardner, et al., 51 Neb., 71; The Kensington, 183 U. S., 263; Liverpool Steam Co. v. Phoenix Ins Co., 129 U. S., 397; Louisville & Nashville R. R. Co. v. Brownlee, 14 Bush, 590.

2. Section 196 of the Constitution is inclusive of and applicable to a shipment from a point in another State to a point in this State. Ohio & Mississippi R. R. Co. v. Tabor, 98 Ky., 503; Tecumseh Mills v. L. & N. R. R. Co., 108 Ky., 572; C., B. & Q. R. R. Co. v. Gardner, 51 Neb., 71; Schulze-Berge v. The Guildhall, 58 F. R., 796; Spreckel's Sugar Refining Co. v. The Glenmavis, 69 F. R., 472; Dyke v. Erie Railway, 45 N. Y., 113; Pennsylvania Co. v. Fairchild, 69 Ill., 260.

3. To apply the provisions of Section 196 to a shipment like the one here involved would not be to contravene the Constitution of the United States giving power to Congress to regulate commerce between the States, nor would it be to deprive the defendant of its property without due process of law, nor to deny it the

equal protection of the laws. Hart v. Chicago, etc., R. Co., 69 Iowa, 485; Pennsylvania R. Co. v. Hughes, 24 S. C. Rep., 132.

4. The common carrier in this case, under the common law, is liable as an insurer. 4 Elliott on Railroads, 1545; Hall v. Renfro, 3 Met., 51.; Louisville, etc., R. Co. v. Hedger, 9 Bush, 645.

5. The motion for a new trial granted to the plaintiff by the court below was properly granted, aside from the questions raised on this appeal, and in no event, even if the judgment shall be reversed, should the judgment on the first verdict be reinstated.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING

The appellant, Cleveland, Cincinnati, Chicago & St. Louis Railway Company, is an Ohio and Indiana corporation, operating a line of railroad connecting Peoria, in the State of Illinois, with Louisville, in the State of Kentucky. The latter city is one of the termini of its railroad. On the 20th day of July, 1899, the appellee delivered to the appellant at Peoria, Ill., 16 horses, being one car load, to be transported by the appellant over its line of railroad from Peoria to Louisville, there to be delivered by the appellant to its connecting line for transportation to Bardstown, in Nelson county, Ky. The shipment was a through one from Peoria, Ill., to Bardstown, Ky. The railroad company, at the time it received the horses, made and delivered to the appellee a through bill of lading, providing for the delivery to its connecting line at Louisville, which contained stipulations limiting its liability for loss or damage to the property while in transit. On appellant's line of railroad at a point in the State of Illinois the car in which appellee's horses were, caught fire while the train was running, whereby three of the horses were killed, and two others so severely injured as to practically destroy their value. This suit was brought on the contract of carriage to recover of appellant the damages sustained by appellee for the loss and injuries named. The petition charged the loss and damage in this language:

Cleveland, C., C. & St. L. Ry. Co. v. Druien.

"Plaintiff avers that while said horses were in transit and being transported by defendant under its said agreement, and by the negligence of the defendant, three of said horses were killed, or so injured that they died therefrom within less than seven days, and two others severely injured, so as to greatly impair their value; all of which injuries were received and incurred on defendant's line of railway in the State of Illinois, while in defendant's custody and under its control, and on said day of July, 1899—all to the damage of the plaintiff in the sum of $1,375." The answer denied the charge of negligence. By the second paragraph of the answer the railway company pleaded that the horses were delivered to it in Illinois; that the bill of lading evidencing the contract between the parties was there signed by the railway company and the plaintiff, through his agent; that this bill of lading provided that the railway company should not be responsible for any injury occasioned to the horses by fire not the result of the negligence of the railway company; that the only injury received by the horses was from an accidental fire, which was not the fault of the railway company; that this stipulation in the bill of lading was valid by the law of the State of Illinois; that the contract of shipment was made in Illinois; that the carriage began in that State, and that the fire occurred in that State. Other defenses were tendered in additional paragraphs of the answer, but a demurrer was sustained to them.

In view of the conclusion at which we have arrived, we do not deem it necessary to notice further the defenses held bad on demurrer. The demurrer was overruled as to the first two paragraphs. The effect of the ruling of the court was to hold: (1) That the stipulation limiting the liability of the carrier for loss or damage resulting from fire not

Cleveland, C., C. & St. L. Ry. Co. v. Druien.

caused by its negligence is a valid stipulation, enforceable against the plaintiff in this action. (2) That, therefore, the denial of negligence is a sufficient plea.

Upon the issue whether the fire was the result of appellant's negligence the jury found a verdict for the railroad company. Upon motion for a new trial made by the plaintiff the court retracted its ruling, and held that the stipulation contained in the bill of lading limiting the liability of the carrier is not an enforceable one in this action. The new trial was consequently granted. At the second trial precisely the same evidence was introduced as upon the first. The court peremptorily directed the jury to find the plaintiff's damages, about which there was really little or no dispute. This ruling of the trial court presents the real question for decision here, which is, was the stipulation in the bill of lading valid as a defense to this action?

It is claimed by appellant, and conceded by appellee, that the contract is to be regarded as an Illinois contract, and therefore to be construed and given effect according to the laws of the State of Illinois. But appellee makes this concession with the proviso that the terms of the contract do not contravene any general public policy of the State of Kentucky. The rule for the construction of contracts made in one country to be performed wholly or in part in another, as applied by the courts of America and England, is a common-law rule. It is the result of the efforts of the courts to enforce the agreement of the parties to the undertaking. Foremost in such an inquiry, where the instrument itself is silent or ambiguous upon a given point, is to find the intention of the parties, to the end of giving it effect. It is presumed, where the contract is made in one country, to be performed wholly in another, that the laws of the latter were in the minds of the contracting parties, and that the

terms of the contract were made with respect thereto.   But where the agreement was to be performed partly in the country where made and partly elsewhere the general rule seems to be that the laws of the country where the contract was made were in the contemplation of the parties as to its legal meaning and effect, and it will be construed and enforced accordingly. 2 Parsons on Contracts, 570; Bishop on Contracts, sections 1391-1393.  The text and authorities in 5 Am. & Eng. Ency. Law (2d Ed.) 302, also sustain the foregoing statement.   But there are necessary exceptions to this rule; as where the contract, though valid where made, is immoral, and the like.   Bishop, Contracts, section 1382.  This presumed intention of the parties, being based upon probability, can not be entertained—at least, ought not to be—when to do so would be to convict them of an intention to violate a statute, whether there is a penalty attached to it or not.   It may be doubted whether, in the general run of such transactions, the parties really have in mind the laws of either of the States.   The fiction is a necessary convenience contrived by the courts to supply those latencies that seem to take for granted that the law, which is very often the outgrowth or the beginning of a custom, and therefore generally known and observed, was to be resorted to in the interpretation of the terms of the agreement, being, as is sometimes said, read into the agreement; otherwise the contract would be meaningless, or so obscure as to its meaning as to be unenforceable, which, of course, could not have been mutually intended.   But the rule is not a hard and fast one. Appellee urges that one of its exceptions is where, though it were the real intention of the parties that the contract should be interpreted by the laws of the country where made and where it was to be partly performed, its terms are in violation of the public policy of the

country where it is sought to be enforced, the courts of the latter will not enforce such objectionable terms; that to do so would be to make the agreement of the parties paramount to the laws of the forum, and to compel the courts to violate the laws of their State, which they are sworn to uphold, in order to carry into effect an agreement between individuals. This point is made clear, it is argued, by applying to the attempted enforcement of this contract section 196 of the Constitution of this State, which reads as follows: "Transportation of freight and passengers by railroad, steamboat or other common carrier shall be so regulated, by general law, as to prevent unjust discrimination. No common carrier shall be permitted to contract for relief from its common law liability." At the common law, which obtains in Illinois as well as in this State, a common carrier is liable for loss of freight in its charge occurring by fire, whether or not caused by its own negligence; its liability being that of an insurer. Lawson, Contract of Carriers, 244; Rorer on Railroads, 1238; Adams Express Co. v. Guthrie, 9 Bush, 78; Adams Express Co. v. Nock, 2 Duv., 562, 87 Am. Dec., 510. But at common law it could limit its liability for loss occurring by fire not caused by its negligence. Anchor Line v. Dates, 68 Ill., 369; Adams Express Co. v. Haynes, 42 Ill., 89; Anchor Line v. Knowles, 66 Ill., 150; Merchants' Despatch Co. v. Theilbar, 86 Ill., 71; Merchants' Despatch Co. v. Leysor, 89 Ill., 43; Black v. Wabash Ry., 111 Ill., 351, 53 Am. Rep., 628; Brown v. Louisville & Nashville R. R. Co., 36 Ill. App., 140; First National Bank of Hupeston v. Lake Erie R. R., 65 Ill. App., 21; Illinois Central R. R. Co. v. Frankenberg, 54 Ill., 88, 5 Am. Rep., 92; Lawson on Contract of Carriers, 244. Under section 196 of the Constitution such contracts can no longer be made in this State.

Appellee contends that the provision of the Constitution

is the most emphatic indication possible of the public policy of this State on that subject; that no contract to carry freight in this State can limit the common-law liability of the carrier with respect thereto, wherever made. He goes further. He insists that a contract by a common carrier to carry freight anywhere, even if made and to be executed entirely out of this State, if liability is sought to be enforced under it in this State, can not be enforced here; that the public policy of this State forbids its enforcement, if to do so would be to limit its common-law liability. The cases of The Kensington, 183 U. S., 263, 22 Sup. Ct., 102, 46 L. Ed., 190, and Liverpool Steam Co. v. Phoenix Insurance Company, 129 U. S., 397, 9 Sup. Ct., 469, 32 L. Ed., 788, and Chicago, etc., R. Co. v. Gardiner, 51 Neb., 70, 70 N. W., 508, are cited and relied on as sustaining appellee's position. An earnest desire to contribute to the uniformity of the law, as well as great respect for the eminent courts whose decisions are invoked, have led us to a careful examination of the opinions, and of what we understand to be the principle controlling them. In the case of The Kensington, 183 U. S., 263, 22 Sup. Ct., 102, 46 L. Ed., 190, the facts were these: The Kensington, a steamer transporting passengers from Antwerp to New York, issued to a passenger at Antwerp a ticket for New York, which had printed on it stipulations relieving the steamship company from certain acts of negligence on the part of its servants. A libel was filed by the passenger in a federal court to recover damages for the loss of baggage belonging to the passenger. The contract against liability was relied on to defeat a recovery, and the laws of Belgium were invoked to support the validity of the contract because it was made in Belgium, where the limitations of liability of the carrier even as against its own negligence was valid. Mr. Justice White, delivering the opinion of the court, said: "Testing the exemptions

found in the ticket by the rule of public policy, it is apparent
that they were void, since they unequivocally sought to re-
lieve the carrier from the initial duty of furnishing a sea-
worthy vessel, for all neglect in loading or stowing, and,
indeed, for any and every fault of commission or omission on
the part of the carrier or his servants. . . . As the ticket
.was finally countersigned in Belgium, and one of the condi-
tions printed on its face provides that 'all questions arising
hereunder are to be settled according to the Belgium law,
with reference to which this contract is made,' it is insisted
that such law should be applied, as proof was offered show-
ing that the law of Belgium authorized the conditions. The
contention amounts to this: Where a contract is made in
a foreign country, to be executed at least in part in the
United States, the law of the foreign country, either by its
own force or in virtue of the agreement of the contracting
parties, must be enforced by the courts of the United States,
even although to do so requires the violation of the public
policy of the United States. To state the proposition is, we
think, to answer it. It is true, as a general rule, that the
*lex loci* governs, and it is also true that the intention of
the parties to a contract will be sought out and enforced.
But both these elementary principles are subordinate to and
qualified by the doctrine that neither by comity nor by the
will of contracting parties can the public policy of a coun-
try be set at naught. Story, Conflict of Laws, secs. 38, 244.
. . . In the very nature of things, the premise upon which
this decision must rest is controlling here, unless it be said
that a contract made in a foreign country, to be executed in
part in the United States, is more potential to overthrow the
public policy, enforced in the courts of the United States,
than would be a similar contract, validly made, in one of
the States of the Union. Nor is the suggestion that because

Cleveland, C., C. & St. L. Ry. Co. v. Druien.

there is no statute expressly prohibiting such contracts, and because it is assumed no offense against morality is committed in making them, therefore they should be enforced despite the settled rule of public policy to the contrary. The existence of the rule of public policy, not the ultimate causes upon which it may depend, is the criterion." We have quoted thus freely from the opinion of the learned justice, not only because it is the strongest statement of the general principle on which appellee relies to which our attention has been directed, but also because we are in accord with it. The other Supreme Court case (Liverpool Steam Co. v. Phenix Insurance Co.) is like the case of The Genesee. In each of these cases it is to be noticed that the contracts were to be partly performed in the United States, and almost wholly within their jurisdiction. In each of them the injury sustained, the breach of the contracts, was within the maritime jurisdiction of the United States courts, to wit, upon the high seas. The gist of these decisions is that where parties contract to be partly performed in the United States, and where the breach occurs and the liability attaches within their jurisdiction, their courts, in construing the contract, will apply to it their own laws. Neither of the cases go so far as to say, nor do we understand that they intimate, that if the breach of a valid contract made in a foreign country had occurred there, and therefore the liability of the carrier had been initiated and consummated there, the provisions of the contract would not have been a good defense to a suit brought upon it in the courts of the United States, although such provisions were against the public policy of the United States. The Nebraska case does not show where the loss occurred. It does not appear in its statements to be necessarily opposed to these views.

The public policy of this State is necessarily confined to

the regulation of its own affairs and transactions occurring within its sovereignty. No State can be said to have a public policy as to the administration of justice, or as to the service of quasi public agencies, or as to contracts made with respect thereto, transpiring wholly abroad. The public policy of a State can no more have extraterritorial effect than can a statute of the State. If the State of Illinois permits the making of contracts by common carriers limiting their liability for loss of freight not by their own negligence, that is a policy of that sovereignty which can not possibly concern the State of Kentucky. Such contract made there, and to be performed there, being valid there, is the lawful agreement of the parties to it. Their minds have met, and the consideration for it has been based upon that condition and state of law. If one of the parties sues in this State to enforce a liability under such contract, it in no wise involves the public policy of this State for our courts to determine what the rights of the parties were before they came into court, and to adjudge that liability according to their contract, there being nothing immoral in it. But whether or not it would be enforced here by granting affirmative relief, if its terms presented a complete defense to the suit of the other party upon it, that defense ought to be allowed. We know that there are freight railroads that traverse both the States of Illinois and Kentucky. A shipment of freight contracted, begun, and ended in the State of Illinois is the making and execution of an Illinois contract. If sued there upon it, the carrier could plead its terms as a defense to certain liability under it. Why should the courts of this State, if the complainant should sue the carrier here, it having agents here upon whom process might be served, annul a provision of the contract that was legal where made, where it was to be executed, and where it was executed? Instead of en-

forcing a valid contract of parties, that would be to make a contract for them, which neither had ever contemplated, and which possibly one of them, at least, might have refused to enter into. When a contract of shipment is made to be partly performed in another State where made and partly in this State, the agreement of the parties, if valid where made, ought to bind them as to all rights and defenses accruing under the contract in that State, although the provision could not be binding if made here. But as to that part of the contract that is to be performed in Kentucky, it will be read in the light of the laws and Constitution of this State, and be construed and applied accordingly. It will be conclusively presumed that the parties so intended, and that, therefore, the provision limiting the carrier's common-law liability was not intended to apply to that part of the shipment that was to be performed here; for the court will not presume that the parties intended either a vain or illegal thing. That contracts to be performed partly in two States will be construed according to the laws of each of the States relating to the portions to be performed there, respectively, is sustained in Bishop on Contracts, section 1394. If shipper and carrier, by entering into the contract beyond this State, could incorporate binding provisions in it limiting the duties and liabilities of carriers in this State notwithstanding the prohibition of the Constitution, it would be to put the bargains of individuals above the organic law, and to substitute them for that public policy exercised by the State for the best welfare of the whole people as an organized society. This they ought not and will not be permitted to do.

The test then comes, when and where did the liability under the contract before us occur? It is admitted and it is clear that it is an Illinois contract that is valid in that State, and that it was to be partly performed in that State. While

being so performed it was broken there. Appellee contends that the contract bound the carrier to deliver the horses at the agreed destination, which was in Kentucky, and that the failure to deliver was the breach of the contract, which occurred in this State. But the contract was not only to deliver; it was also to safely carry. It was broken in Illinois when the horses were killed. A cause of action upon the contract instantly arose. A suit could have been maintained there that moment for its breach. The agreement, the duty of the carrier, its failure if it did fail, and its contract immunity from that cause of loss all arose under, and are to be controlled by, the laws of Illinois. Up to that time there was not an incident of the parties' agreement or rights relating thereto that had come under the laws of Kentucky, or that the public policy of this State could possibly affect. This suit is to enforce those rights and liabilities as of the time and place of their occurrence; not to change them.

It is therefore directed that the judgment appealed from be reversed, and that the cause be returned to the circuit court, with directions to enter judgment upon the first verdict.

Petition for rehearing by appellee overruled.