CASE 79—ACTION BY JOHN E. HOWARD AGAINST THE WESTERN UNION
TELEGRAPH CO., FOR DAMAGES IN FAILING TO DELIVER A TELEGRAM.
—FEB. 7.

# Howard v. Western Union Telegraph Co.

| 119 | 625 |
| 122 | 843 |

APPEAL FROM BELL CIRCUIT COURT—M. J. MOSS, CIRCUIT JUDGE.

JUDGMENT FOR DEFENDANT.   PLAINTIFF APPEALS.   AFFIRMED.

TELEGRAPHS—MESSAGES—ILLNESS OF RELATIVES—DAMAGES—MENTAL
SUFFERING—WHAT LAW GOVERNS—EVIDENCE.

1. In an action against a telegraph company for negligence in
failing to promptly deliver a message to plaintiff informing
him of the serious illness of his son, plaintiff could not re-
cover without proof that he could have arrived at his son's
bedside before his death if the message had been promptly
delivered

2. In an action for failure to promptly deliver a telegram announc-
ing the serious illness of the plaintiff's son, evidence HELD in-
sufficient to show that plaintiff could have reached his son be-
fore he died, had the message been promptly delivered.

3. Where a contract for the transmission and delivery of a tele-
gram was made in West Virginia, but was to be consummated
by delivery in Kentucky, and the negligence complained of con-
sisted of delay in delivery occurring mainly in Kentucky, the
contract was governed by the laws of that State.

4. In an action for delay in delivering a message announcing the
serious illness of plaintiff's son, plaintiff is not precluded from
recovering for mental suffering by reason of the fact that no
physical injury resulted.

## ON REHEARING.

1. In an action for delay in delivery of a message, a paragraph of
the answer alleged that the contract for transmitting and de-
livering the telegram to plaintiff informing him of the wound-
ing of his son was made in West Virginia and the considera-
tion paid there, that the contract was to be performed in that
State, that the parties contracted with reference to the laws
of West Virginia, and that the contract should be construed
according to such laws, under which a recovery of damages

for mental pain and suffering without physical injury could not be had. The paragraph did not deny that the telegram was to be delivered in Kentucky, which was admitted by another paragraph. HELD, that the first-mentioned paragraph was demurrable as alleging mere conclusions, contradictory of the admitted facts

2. Where an interstate telegram was to be delivered at a place in Kentucky, the place of performance of the contract for transmission was in that State.

3. Where defendant's failure to deliver a telegram within a reasonable and customary time resulted from its negligence, it was immaterial whether such negligence was that of its agent in the State where the message was sent, or its agent in Kentucky who received it.

A. G. PATTERSON, ATTORNEY FOR APPELLANT.

1. We contend that the court improperly overruled appellant's: demurrer to the second paraghaph of the answer herein, which paragraph sets out in detail and pleads a rule which is claimed among other rules to be printed on the back of each of appellee's messages as follows: "The message will be delivered free, within the established free delivery limits of the terminal office." And in which paragraph appellee pleads that the city of Pineville is a town of less than 5,000 inhabitants, and that under a rule made by appellee the free delivery limits established by it in such towns is confined to a radius of one-half mile from the office of appellee.

2. We contend that it was sufficient for appellant to prove that he had received the message within a reasonable time after it was delivered to appellee at its Devon office, that in the ordinary course and manner of travel he had ample time in which to reach the bedside of his son before his death This fact was proven by appellant and stands uncontroverted.

## AUTHORITIES CITED.

Western Union Telegraph Co. v. Cross, Admr., 25 Ky. Law Rep., 268; Western Union Telegraph Co. v. Cross, Admr., 25 Ky. Law Rep., 646; Howard v. Western Union Telegraph Co., 25 Ky. Law Rep., ——; Greenhood on Public Policy, page 526; Western Union Telegraph Co., v. Blanchard, 68 Ga., 299, 145. Am. Rep., 484; Marr v. Telegraph Co., 85 Tenn., 545; Ayer v. Western Union Tel. Co., 79 Me., 493; 1 Am. St. Rep., 353; Paducah & Memphis R. R. Co. v. Holhl, 12 Bush, 46; Louisville & Portland Canal Co. v. Murphey, Admr., 9 Bush, 522; Bartlett v.

Howard v. Western Union Tel. Co.

Western Union Tel. Co. 62 Me., 209, 16 Am. Rep., 437; Western Union Tel. Co., v. Eubanks & Russell, 100 Ky, page 591; Amer. & Eng. Encyc. of Law, Vol. 3, page 561, 1st Ed.; Goddin v. Shipley, 7 B. M., 575; Tyler v. Trabue, 8 B. M., page 306; Amer. & Eng. Encyc. of Law, 2nd Ed., Vol. 22, page 1325; Stevens v. Gregg, 89 Ky., page 461; 6 Cyc., page 412; Davis v. Morton Galt & Co., 5 Bush, 166; Kent, Lectures, 29, 2nd Vol., Commentaries 462; Gault v. Equitable Trust Co., 100 Ky. Rep., 578; Balme v. Wonbrough, 38 Barbour, 362; Chapman v. West. Union Tel. Co., 90 Ky., 268; West. Union Tel. Co. v. VanCleave, 22 Ky. Law Rep., 53; Story's Conflict of Laws, page 469; Amer. & Eng. Encyc. of Law, 2nd Ed., Vol. 27, page 1079; Western Union Tel. Co., v. Blake, 68 S. W., 526; Bishop on Contracts, Sec. 1394; Gray v. Western Union Tel. Co., Amer. State Rep., 706, 64 S. W., 1063; Western Union Tel. Co., v. James, 162 U. S., 651, 16 Sup. Ct. Rep., 934; Steele v. Curl, 4 Dana, 381; Short & Co., v. Trabue & Co., 4 Met., 299; Beard's Executor v. Basye, 7 B. M., 144; Ford v. Buckeye State Ins. Co., 6 Bush, 140; Woodson v. Bank of Gallipolis, 4 B. M., 205; Grubbs v. Harris, Assignee, 1 Bibb, 567; Western Union Tel. Co. v. Lydon, 82 Texas, 364; Loper v. Western U. Tel. Co., 70 Texas, 689, 6 Am. St. Rep., 864.

RICHARDS & RONALD, GEO. H. FEARONS and WILLIAM LOW, ATTORNEYS FOR APPELLEE.

We respectfully submit:

1. That a contract for the transmission of an interstate telegram is governed by the laws of the State where the contract is made and partially performed.

2. (a) That there is no evidence that any of the trains in question ran on October 4th, or 5th, 1902, so as to allow plaintiff to reach the bedside of his son before his death. The fact that a train ran according to a certain schedule in one month raises no presumption that the same schedule was in force several months prior thereto.

(b) There is no evidence that any of said trains ran on Sunday, October 5th, 1902. The court will take judicial knowledge of the fact that not all trains run on Sunday

(c) There is no evidence of the fact that any of said trains were on time, or made their connections at the three points at which plaintiff had to change cars on the date in question. Plaintiff testifies that when he made the journey, so as to arrive at Devon a little after midnight, the trains made "close connections." The presumption is that if any of them had been late he would not have made such connections.

(d) There is no evidence that the train or trains upon which

plaintiff claims he would have reached Devon arrived in time on October 5th, 1902. If they had been a very few minutes late, according to his own theory, he could not have reached the bedside of his son before his death.

(e) There is no evidence that if plaintiff had arrived at Hurley at the time he claims he would have arrived, he could have made the journey from the terminus of the railroad at Hurley to the bedside of his son in the brief space of time (about seventeen minutes) remaining for the journey This trip may have required minutes or hours.

## AUTHORITIES.

Ohio & Miss Ry. Co. v. Tabor, 98 Ky., 503; Davis v. Morton, 5 Bush, 166; McDaniel v. Chicago &c., R. R. Co., 24 Iowa, 416; Liverpool & Great Western Steam Co. v. Phœnix Ins. Co., 129 U. S., 464; Reed v. W. U. Tel. Co., 135 Mo., 761; W. U. Tel. Co. v. Christensen, 78 S. W., 745; W. U. Tel. Co., v. Buchanan, 80 S. W., 561; Bryan v. W. Union Tel. Co., 45 S. E., 938; Shaw v. Postal Cable Co., 79 Miss., 670; W. U. Tel. Co. v. Eubanks & Russell, 100 Ky., 591; Hartmann v. L. & N. R. R. Co., 39 Mo. App., 88; W. U. Tel. Co. v. Hendricks, 63 S. W., 341; W. U. Tel. Co. v. Parsons, 72 S. W., 800; Paducah & Memphis R. R. Co., v. Hoehl, 12 Bush, 46; W. U. Tel. Co., Daniels, 15 Ky. Law Rep., 813; W. U. Tel. Co. v. Matthews, 55 S. W., 427; W. U. Tel. Co. v. Cross, Adm'r, 74 S. W., 1098.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

This case is before us the second time. It was reversed upon the former appeal because of error upon the part of the lower court in dismissing the action as a result of appellee's refusal to make his petition more specific. See Howard v. Western Union Telegraph Co., 76 S. W., 387, 25 Ky. Law Rep., 828. Upon the trial that followed the return of the case to the lower court, that court at the conclusion of appellant's testimony gave the jury a peremptory instruction to find for the appellee, and they returned a verdict as instructed. We are asked by appellant to review the rulings of the lower court as to the giving of the peremptory instruction, and in refusing him a new trial.

The appellant brought the action to recover damages of the appellee for mental suffering caused him by the alleged negligent failure of its agents to transmit and deliver within a reasonable time the following telegraphic message: "To John Howard, Pineville, Ky.: Lark shot dangerously bad. Come at once. L. Jackson." The appellant lives at Pineville, this State, and the "Lark" referred to in the telegram was his son, Larkin Howard, who was shot at Hurley, W. Va., on the afternoon of October 4, 1902. The message was telephoned from that place, a distance of twelve miles, to Devon, W. Va., where it was received by appellee's agent in charge of its telegraph office at that place about 5 o'clock p. m., October 4th, and was by him later forwarded to appellee's office at Pineville, Ky., where it was received at 11:45 p. m. of the same day, but was not delivered to appellant until 8:05 a. m., Sunday, October 5th. It was averred in the petition that by reason of the negligence of appellee's Devon agent in delaying the sending of the message, and that of its Pineville agent in delivering it, appellant was prevented from reaching his son's bedside before his death, which occurred at 1:30 a. m., October 6, 1902.

It appears from the evidence that appellee was about seven hours in transmitting the message from Devon to Pineville, and that about sixteen hours intervened between the time of its receiving the message at Devon and its delivery to appellant. This delay seems to us unreasonable and inexcusable. But conceding the negligence of appellee on this point, if, as a matter of fact, the message had been transmitted and delivered in reasonable time, and it was nevertheless out of appellant's power to have reached his son's bedside before his death, he was not entitled to recover; and it was because the lower court was of opinion that there was no evidence conducing to prove that appellant, if the message had been

promptly transmitted and delivered ,could, in the usual course of travel, have reached his son before his death, that the peremptory instruction was given the jury to find for appellee.

It was held by the court of appeals of Texas in Western Union Telegraph Co. v. Hendricks, 63 S. W., 341, that where a message was sent to a father, informing him of the illness of his son, and he could not have reached the son before he died if the message had been promptly delivered, a delay in delivering the message would not warrant a recovery of damages for the failure to reach the son before his death. This doctrine was recognized by this court in Western Union Telegraph Co. v. Parsons, 72 S. W., 800, though it could not be applied to the facts of that case.

It is conceded that appellant's son died at the house of Lee Jackson, in Hurley, W. Va., at 1:30 o'clock a. m., October 6, 1902. The evidence introduced as to how and when appellant might have reached his son consisted mainly of his own testimony, according to which there were two routes from Pineville—one over the Louisville & Nashville Railroad to Winchester; thence over the Chesapeake & Ohio Railway to Ashland; thence over an electric line to Kenova, W. Va.; thence over the Norfolk & Western Railroad to Devon, from which point a dummy line runs a distance of twelve miles to Hurley. The other route is by the Louisville & Nashville Railroad from Pineville to Norton, Va.; thence to Bluefield; thence over the Norfolk & Western Railroad to Devon. It was stated by appellant that if the message announcing the wounding of his son had been promptly transmitted and delivered to him on the evening of October 4, 1902, he could have taken a train by way of Winchester that left Pineville at 10 p. m. the same day, or gone by way of Norton by taking a train that left Pineville at 7:50 a. m., October 5th, upon

either of which he thought he could have reached Hurley before his son's death.   All that appellant testified as to the Winchester route was mere hearsay, for he admitted that he had never been over that route, but said that, had connection been made with the different railroads indicated, at Winchester and Ashland, by this route the train would not have arrived at Kenova at 4 p. m. Sunday, October 5th, which place was still 100 miles from Devon; and he was unable to say whether a train ran from Kenova to Devon on Sunday, or, if so, when it left Kenova or arrived at Devon.   No time-tables were introduced by appellant to show the time of the running of the trains on either route, nor did he introduce any of the employes of any of the railroads to prove these facts.   We do not think there was any competent testimony conducing to prove that appellant, by the Winchester or Kenova route, could have reached his son before the latter's death.   Besides, it is apparent that, for some cause satisfactory to himself, he was unwilling to take the Winchester route, though he could have done so on Sunday, October 5th, at 10 p. m., instead of doing which he went Sunday afternoon as far as Middlesboro to obtain a pass over the Norton route, which he secured, and on the morning of the 6th (Monday) started from there by way of Norton to go to his son, but he got no further than Norton as he there received a telegram informing him of his son's death, whereupon he at once returned to Pineville.

Appellant further testified that if the message from Jackson, announcing the condition of his son had been promptly delivered, he believed he could have taken the Louisville & Nashville train at 7:50 a. m. on Sunday, October 5th, and by the Norton route have reached his son in time to see him alive.   This conclusion was not based upon his knowledge of the running of the trains on that route as of the date of his son's death, but from knowledge derived by going over that

route in December, 1902, two months afterwards. He did not, however, testify that the time schedule was then as it was at the time of his son's death. All that he know was that if the trains on the Norton and Bluefield route ran on October 5, 1902, as they did in December following, by taking the 7:50 train on the morning of Sunday, October 5th, he could, if close connection had been made at Norton and Bluefield, have reached Devon at 12:13 Sunday night, and from that place he could have gone upon another line of railroad in an hour's time to Hurley, which would have enabled him to reach the latter place at 1:13, just seventeen minutes before his son's death. It does not appear from appellant's testimony, or from that of any other witness, how far Lee Jackson, at whose house the son died, lived from the depot at Hurley; whether he was a resident of the town, or lived some distance in the country; consequently the evidence does not show whether appellant, if he had arrived at Hurley at 1:13, could have gotten to his son in the seventeen minutes of time intervening between the arrival of the train and his death. The burden was upon appellant to prove not only that appellee was guilty of negligence in transmitting or delivering the telegram, but, in addition, that such negligence was the proximate cause of his failure to reach the bedside of his son before the latter's death. We are of opinion that the lower court was authorized to conclude that there was no evidence conducing to prove that appellant could have reached his son before his death if the telegram had been promptly delivered. Consequently there was no error in the giving of the peremptory instruction.

It is contended by counsel for appellee that the peremptory instruction was also authorized upon the ground that a contract for the transmission of an interstate telegram is governed by the law of the State where it is made, and that the

telegram in this case was sent from West Virginia under a contract made in that State, which was in part performed in that State, and under the laws of that State a recovery of damages for mental suffering unaccompanied by physical injury is not allowed. This defense was specifically pleaded in the third paragraph of the answer, to which a demurrer was sustained by the lower court. In some of the States the courts have held as contended by appellee, but the weight of authority supports the contrary view. "Where contracts are made in one place, to be performed at another, they are to be governed by the law of the place of performance, as to validity, nature, obligation, and interpretation. But the remedy upon it will be governed by the law of the State in which the remedy is sought. . . . Where a contract is made in one State, and intended to have effect in another, it must conform to the laws of the latter State." Am. & Eng. Ency. of Law, vol. 3, p. 561; Goddin v. Shipley, 7 B. Mon., 575; Tyler v. Trabue, 8 B. Mon., 306; Stevens v. Gregg, 89 Ky., 461, 11 R., 686, 12 S. W., 775; Chapman v. Western Union Telegraph Co., 90 Ky., 268, 12 R., 265, 13 S. W., 880. In Am. & Eng. Ency. of Law, vol. 27, p. 1079 (2d Ed.), we find the following under the head of 'Conflict of Laws:" "The fact that damages for mental anguish alone are not recoverable under the laws of the State from which the message was sent will not preclude a recovery of such damages in the State to which the message was directed, where the laws of the latter State permit such recovery. Likewise a recovery for such damages may be had in the State whence the message was sent, although they may not be recoverable under the laws of the State where the message was to be delivered. But when the law of the place whence the message was sent and that of the place of delivery both refuse to recognize such damages, they can not be recovered, although the action may have been brought in a jurisdiction

which recognizes the right to recover them." In Western
Union Telegraph Co. v. Eubank & Russell, 100 Ky., 591, 18
R., 995, 38 S. W., 1068, 36 L. R. A., 711, 66 Am. St. Rep.,
361, it was said by this court: "The general rule is that the
law of the place where the contract is to be performed gov-
erns, subject, of course, to the rule that a contract which is
void by the law of the place where made is void everywhere."
The most recent decisions of this court upon the doctrine
in question are to be found in C., C. & St. Louis Ry. Co. v.
Druien, 118 Ky., 237, 80 S. W., 778, 66 L. R. A., 275, 26 Ky.
Law Rep., 103, and Adams Express Co. v. Walker, 119
Ky., —, 83 S. W., 106, 26 Ky. Law Rep., 1025. In the former
case it was held that where the contract is performed in the
State where it is made, the law of that State governs in so
far as it is to be performed outside of this State, but the
law of · this State governs in so far as it is to be
performed in this State. In the latter case it was
held that an interstate contract of carriage to be partially
performed in Kentucky, and partially performed in the State
where made, is governed by the law of the State where made
and partially performed, to the extent of its performance
outside of this State, and governed by the laws of Kentucky
so far as its performance in the latter State is concerned.
If the negligence or breach occur wholly in the State where
the contract is made and partially performed, it is governed
by the laws of that State, but, if the negligence or non-per-
formance occur in Kentucky, it is governed by the laws of
this State. We see no reason why the doctrine announced
in the several cases supra should not apply to the case at
bar. The contract, though made in West Virginia, was to
be consummated in Kentucky, and' the negligence complained
of occurred mainly in the latter State. We are therefore of
opinion that the demurrer to the third paragraph of appellee's
answer was properly sustained.

For reasons herein indicated, the judgment is affirmed.

Judge Nunn dissents.

Response to petition for rehearing by JUDGE SETTLE:

We are asked to modify the opinion herein, to the extent of withdrawing so much thereof as holds that the demurrer to the third paragraph of the answer was properly sustained by the lower court.

The paragraph in question contains the averments that the contract for the transmission and delivery of the telegram informing appellant of the wounding of his son was made in the State of West Virginia, the consideration there paid, and that the contract was to be performed in that State; that the parties contracted with reference to the laws of that State, and intended that the contract should be construed according to the laws thereof; that the breach of the contract, if any there was, occurred in that State; and, further, that, under the laws of West Virginia and the decision of its court of last resort, recovery for damages of mental pain and suffering, such as were claimed by appellant for the alleged negligent failure of appellee to deliver the telegram, are not allowed, because unaccompanied by physical injury.

The paragraph in question does not deny that Pineville, Ky., was the place at which the telegram was to be delivered. Indeed, it is elsewhere in the answer admitted that Pineville, in this State, was the point of delivery, and this fact is shown by the telegram itself. It follows, therefore, that the averments of the answer as to the contract having been made with respect to the laws of West Virginia, and as to its alleged performance in that State, and the like, are mere conclusions of the pleader, contradictory of the admitted facts, and inconsistent with other matters of defense relied on in the answer.

In view of the undisputed fact that the telegram was to be delivered at Pineville in this State, appellant's place of residence, it inevitably follows that the contract could not be fully performed without its delivery within a reasonable time to appellant at that place, hence the place of performance was in this State.

If appellee's failure to deliver the telegram in a reasonable and the customary time resulted from its negligence, we think it immaterial whether the negligence was that of its West Virginia or Kentucky agent, as in either event it affected the performance of the contract in this State by delaying the delivery therein of the telegram, thereby causing a breach of the contract in this State, which would have entitled appellant to recover some part of the damages claimed, but for his failure to prove, as held in the opinion, that he could have reached his son before his death, if the telegram summoning him to his bedside had been delivered in the proper or reasonable time.

As we are unable to perceive any satisfactory reason for modifying the opinion, the petition is overruled.