### No. 5033.

### THE MISSOURI PACIFIC RAILWAY COMPANY *v.* JEROME HARRIS.

1. PUBLIC CARRIERS.—The doctrine once held that carriers of animals did not incur the responsibilities of common carriers, that they were private carriers and subject only to such liabilities as the law imposed upon such bailees, or, as the contract between the parties fixed, does not obtain in in Texas. The carriers of such property are common carriers, subject to the same responsibilities imposed by law on carriers of other property, except as this is modified by the inherent character of such property. It follows that a special contract which by its terms purports to exempt a railway from liability for injury in the transportation of cattle, except such as might result from the willful negligence of a railway company, can not be enforced.

2. SAME.—A common carrier can not by contract be exempted from liability for an injury resulting from the negligence, though not willful, of itself or servants.

3. CONTRACT—COMMON CARRIERS.—A railway company in a suit to recover damages against it for negligence in failing to deliver cattle within a reasonable time, set up a special contract in its answer by which it was agreed that as a condition precedent to the plaintiff's right to recover damages for loss or injury to the cattle, the shipper should give notice in writing of his claim to the officers of the company or its nearest station agent before the cattle were removed from their place of destination, and before they were mingled with other stock. The line of railway did not exend to the point of destination, and both contracting parties understood that the carrier would transport the cattle from its own road over a connecting road. *Held:*

(1) The contract was a limitation on the liability of the carrier at common law.

(2) A limitation on the common law liability of a carrier for the proper delivery of articles to a point beyond the limits of Texas, to be recognized must be reasonable.

(3) The reasonableness of the limitation must appear from the matters set forth in the answer.

(4) The failure of the answer to show that the carrier had an officer or agent so situated that the contract to give notice to such officer or agent was reasonable, was fatal on demurrer.

(5) No presumption can be indulged that the carrier had an officer near the place of destination.

(6) It is doubtful whether, under any circumstances, such a contract, which fails by its terms to specify *who* is the officer or agent to whom notice shall be given, when the carrier is a corporation and the cattle are to be delivered in a distant State beyond the line of its road, should ever be sustained.

APPEAL from Tarrant. Tried below before the Hon. A. J. Hood.

*Davis & Beall*, for appellant, on their proposition that the court erred in sustaining exceptions to that portion of the answer that set up the contract for notice of injury, cited Missouri Pacific Railway Company v. Jerome Harris, Texas Court of Appeals (Texas Law Reporter, April 24, 1882, p. 47); Houston & Texas Central Railway v. Morris, Texas Court of Appeals (Texas Law Review, October 16, 1883, p. 190); Goggin v. Kansas Railroad Company, 12 Kansas, 416; Rice v. Kansas Pacific Railroad Company, 63 Missouri, 314; Express Company v. Caldwell, 21 Wallace, 266; Betts v. Farmer Loan Company, 21 Wisconsin, 82; Bankard v. Baltimore and Ohio Railroad Company, 34 Maryland, 197; Wolf v. Western Union Telegraph Company, 62 Pennsylvania, 83.

*Ball & McCart*, for appellee, cited Missouri Pacific Railway Company v. Jerome Harris, Texas Court of Appeals (Texas Law Reporter, April 24, 1882, p. 47); Houston & Texas Central Railway v. Burke, 55 Texas, 323; Chevallier v. Strahan, 2 Texas, 115; McDaniel v. Chicago & Northwestern Railroad, 24 Iowa, 412; Arnold v. Jones, 26 Texas, 337; Heaton & Brother v. Morgan's Louisiana & Texas Railroad, 4 Texas Law Journal, 375; Railroad Company v. Lockwood, 17 Wallace, 357; Railroad Company v. Manufacturing Company, 16 Wallace, 318; Mastin v. Baltimore & Ohio Railroad, 35 American Reports, 748; 2 Redfield on Railways, pages 107 and 121; Memphis Railroad Company v. Holloway, 4 Law and Equity Reports, 425; Browning v. Long Island Railroad, 2 Daly, 117; Chrisler v. St. Paul Railroad, 20 Minnesota, 21; Revised Statutes, page 48, Articles 278 and 280; Houston & Texas Central Railway v. Burke, 55 Texas, 323; Ryan v. Missouri, Kansas & Texas Railway, decided by Commissioners of Appeals, Austin term, 1882; Railroad Company v. Lockwood, 17 Wallace, 357; Railroad Company v. Manufacturing Company, 16 Wallace, 318; Southern Express Company v. Caperton, 44 Alabama, 101 (4 Am. Rep., 118); Porter v. Express Company, 4 South Carolina, 135 (16 Am. Rep., 762); Capehart v. Railroad Company, 81 North Carolina, 438; 68 Missouri, 268 (31 Am. Rep., 505); Bank of Kentucky v. Adams Express Company, 93 United States, 174; Place v. Union Express Company, 2 Hilton, 19; Adams Express Company v. Reagan, 29 Indiana, 21; 2 Redfield on Railways, page 120; Lawson's Leading Cases Simplified, 119, 121.

STAYTON, ASSOCIATE JUSTICE.    This action was brought by the appellee to recover damages for injury claimed to have been received by the failure of the appellant, within a reasonable time, to transport two hundred and eighty-five head of beeves from Temple, Texas, to Chicago, Illinois, and to recover the value of one beef claimed to have been lost through the appellant's negligence.

It is claimed that the beeves were deteriorated in value by the long time in which they were in course of transportation.    The appellant alleged that in consideration that it would transport the beeves at a reduced price, the appellee, by special contract, agreed to assume all risks of damage the cattle might sustain by reason of any delay in transportation, unless such damage resulted from the willful negligence of its agents.    The appellant further pleaded that it was agreed by special contract "that as

a condition precedent to plaintiff's rights to recover damage for any loss or injury to said cattle, he should give notice in writing of his claim therefor, to the said officers of defendant, or its nearest station agent, before said cattle were removed from their said place of destination above mentioned, and before they were mingled with other stock."

These special contracts covering all the beeves were made exhibits to the answer. These contracts were elaborately drawn, and in terms released the appellant from liability for losses resulting from many things, for which a common carrier would ordinarily be liable, but as no claim for damages is based on the violation of duty by the carrier in any other respect than as above stated, it will not be necessary to consider them.

The appellee filed demurrers to so much of the answer as set up the special contracts, and these demurrers were sustained.

It is claimed that this was error. It was at one time held that carriers of animals did not incur the responsibilities of common carriers; that they were private carriers, and subject only to such responsibility as the law imposed upon such bailees, or as the contract of the parties fixed. This holding, however, has long since ceased to be held correct, and it is now held that the carriers of such property are common carriers, subject to the same responsibilities as carriers of other classes of property, except as this is modified by the inherent character of such property.

By the Constitution of this State railroads are declared to be common carriers (Const., art. 10, sec. 2), and it is common knowledge that a large part of the business of those corporations in this State is the transportation of animals. The appellant must be held to have received the beeves for transportation as a common carrier; and in so far as it sought to shield itself from responsibility for an unnecessary delay in their transportation, through a special contract which sought to limit its liability to such injury as resulted from the "willful negligence" of its agents, its effort must be held unavailing. By "willful negligence," was evidently meant some gross omission of duty, involving intentional or willful misconduct. The common carrier can not, by contract, relieve itself from liability for an injury resulting from the negligence of itself or servants, though the negligence be of a degree less than was intended by the term used.

The provision in the contract requiring notice of a claim for damages is as follows:

"Said party of the second part further agrees that as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station agent, before such stock is removed from the place of destination above mentioned, or from the place of the delivery of the same to the party of the second part, and before such stock is mingled with other stock." There are many cases holding that a common carrier may, by contract, limit the time within which claim for loss must be made.

In Express Company v. Caldwell (21 Wall., 264) it was held that an agreement that an express company should not be liable for the loss of a package unless claim was made within ninety days after the package was delivered to the carrier, it requiring but a single day to transport the package to the place for delivery, was valid.

The same ruling was made in the case of Westcott v. Fargo (61 N. Y., 542), and in the case of Express Company v. Harris, (51 Ind., 127). In Express Company v. Caldwell, such an agreement was held to operate as a limitation on the carrier's common liability, and as the limitation was deemed reasonable, it was sustained. The same view seems to have been taken in Express Company v. Harris, but in Westcott v. Fargo the agreement was treated as in the nature of a statute of limitation, and it was denied that the giving of the required notice was a condition precedent to right of action.

In Express Company v. Reagan (29 Indiana, 21), such a contract was, in effect, held to be a limitation on the carrier's common law obligation, unreasonable and void.

In Express Company v. Caperton (44 Ala., 103), such an agreement seems to have been treated as in the nature of a statute of limitation, and it was said that the carrier "can not be allowed to make a statute of limitation so short as to be capable of becoming a means of fraud."

In the cases of Goggin v. Railway Company, 12 Kansas, 416, and Rice v. Railway Company, 63 Missouri, 314, it seems to have been held that a contract such as that set up by the defendant in this case is valid: We have not access to either of the volumes in which these cases are reported, and do not know what the facts were.

In the case before us there can be no doubt that it was the intention of the carrier to limit its common law liability, for the contracts assert that as a *condition precedent* to the shipper's right to recover damages for an injury done to his property, while in the hands of the carrier, the shipper shall give notice of his claim before the animals are removed from the place of destination or from the place of delivery.

Such a contract would seem necessarily to operate as a limitation on the carrier's common law liability, for under the rules furnished by that system of laws for the determination of the liability of a common carrier to a shipper for an injury done to the property of the latter while in course of transportation, a cause of action arises at once upon the infliction of the injury, and the requirement of an additional fact before a cause of action exists, and may be enforced, restricts or limits the right which the shipper would have at common law. In the absence of the special contract relied upon, when an unnecessary delay occurred and injury resulted therefrom, the shipper's cause of action was complete, and to require notice, as does the special contract, as a condition precedent to the accruing of the cause of action, is but to say that the contract limits the liability of the carrier, in that it makes its liability depend on the existence of a fact not necessary to fix liability at common law.

Although the rule that a common carrier may limit its liability by contract, when the limitation is one reasonable in character, may have had its origin in England in a statute, it has become very general in the States of this Union in which there is not some statutory regulation forbidding it. Conceding, then, for the purposes of this case, that the statutes of this State forbidding any limitation of the liability of a common carrier by contract are to have effect only as to such carriage as does not go beyond the limits of this State, the question arises whether the contract relied on in this case is reasonable in its character.

The petition shows that both the carrier and the shipper contemplated that the animals should be transported over the line of the appellant's railway, which did not reach the place of destination, and that from the end of its line they should be transported over another railway, through the State of Illinois, to the destination; and the special contract set up in the answer seems to have contemplated the same facts. The sufficiency of the answer must be determined by the case made by the petition, and that it might be a good answer to some case is not sufficient;

the answer must present a defense to the case made by the petition. If the answer does not show that, under the facts existing, the limitation on the carrier's liability sought to be imposed by the special contracts was reasonable in its character, then the answer was not sufficient, and the court below properly sustained the demurrer.

If a carrier sets up a claim to notice of a given fact, as a condition upon which its liability to a shipper is to depend, then it is incumbent upon it, when the notice was to be given to one of its own officers or agents, to show that it had an officer or agent at or near the place where the notice is to be given, in any case in which the shipper, by the terms of the contract through which notice is claimed, is to hold the property shipped at the place of delivery, at his own expense and risk, until it can be inspected by some agent of the carrier.

This would be especially true when the property to be inspected is intended for immediate sale at the place of destination, is perishable in character, likely to deteriorate in value by holding and expensive to keep. If in such case the carrier has not an officer or agent at or near the place where the property to be inspected is delivered, so that notice may be promptly given and an inspection, if desired, speedily made, then a contract requiring notice to be given to an officer or agent of the carrier is not reasonable in its character.

The contract to give notice was not the entire contract; the notice was required to be given to an officer or the nearest station agent of the carrier, and the situation of such officer or agent, with reference to the place from which the notice must necessarily come, and at which an inspection, if desired, would necessarily have to be made, would largely determine whether the contract was reasonable or not. The answer should have shown that the carrier had an officer or agent so situated that the contract to give notice to such officer or agent was reasonable. Under the averments of the petitioner, the place of delivery was beyond the line of the appellant's railway, in another State, and no presumption can arise that the carrier had an officer or station agent near the place of destination.

If the contract were even valid, whether reasonable or not, the shipper would be bound by its terms; but where its validity depends upon its being reasonable, the party who asserts its validity must allege the facts which make it so.

It may well be doubted if such a contract as is relied on in this

case ought ever to be sustained. If a carrier seeks to make its liability to depend on notice to its officer or agent of a claim for damages, it would seem that the responsibility of determining who is an officer or agent of the carrier, within the meaning of the contract, should not be cast upon the shipper, but that the person and his locality to whom the notice must be given ought to be made certain by the contract itself, and especially so when the carrier is a corporation and the property is to be delivered beyond the line of its road through another carrier. We are of the opinion that there was no error in sustaining the demurrers to the answer setting up the defenses we have noticed.

It is not claimed that the court below erred in any charge given, bearing on the measure of damages; and if the appellant desired a charge upon that subject it should have asked one. The verdict seems to be sustained by the evidence, and if the jury believed the testimony of the witnesses it can not be held excessive.

The judgment of the court below will be affirmed.

*Affirmed.*

Opinion delivered December 17, 1886.