## Missouri Pacific Railroad Company v. J. N. Fagan et al.

### No. 6019.

1.   **Declarations of Railway Conductor.**—The declarations of the railway conductor as to the time when his train is due at a station on his route, made while he is running the train, is competent evidence.

2.   **Custom of Railroad Companies.**—To warrant the introduction of usage or custom in a course of trade it is necessary to show that it is uniform, reasonable, and notorious; it must be established by a witness who can testify to the facts constituting the custom.    It was error to admit a witness to testify "it was customary for railroad companies to turn over stock at shipping stations and at destination of stock, just as his were turned over to Jones & Co. at Memphis," it being shown that at Memphis Jones & Co. took the stock in question from the cars to a stock yard and held them for the railroad for the freight—there being no other testimony to the extent of the custom nor to the means of knowledge of the witness.

3.   **Market Value—Opinion.**—Knowledge of the market value is a fact known upon information—it is more than an opinion.

4.   **Custom.**—As a custom must be legal before being admissible in evidence, it was not error to exclude testimony that it was the universal custom of railroads not to ship any live stock or receive any for shipment unless upon the owner agreeing to numerous stipulations which are not allowed to be the subject of contract.

5. **Custom—Shipping Stock.**—See stipulations in a shipping contract in use by railway companies held illegal in many particulars.

6. **Common Carrier of Stock.**—A common carrier has no right to demand of a shipper a waiver of his rights as a condition precedent to receiving freight.

7. **Custom Against Law.**—If the law imposes a duty neglect of which followed by injury would give right to damages, a custom refusing or limiting damages, or a custom that they should be expressly relinquished, would not change the law, and so would be invalid.

8. **Measure of Damages for Loss of Stock Shipped.**—In case of total loss the measure of damages for the loss of mares with foal would be the price they would have brought at the place of destination in the condition they would have been in had the carrier exercised due and necessary care of the stock while in its possession, less the freight.

9. **Measure of Damages in Partial Loss** would be the difference between such price, less the freight, above stated, and the value of the animals at the destination at the time of arrival.

APPEAL from Comal. Tried below before Hon. Thos. M. Paschal. The facts sufficiently appear in the opinion.

*J. D. Guinn,* for appellant. — 1. It was error to admit the declarations of the conductor as to the schedule time of the train. Rev. Stats., art. 4226; 1 Green. Ev., sec. 82; Griffin v. Montgomery Ry. Co., 26 Ga., 111; Robinson v. Fitchburg, 7 Gray, 92; Willis v. G. W. Ry. Co., 12 L. T. (N. S.), 349.

2. Fagan's testimony to the custom of the railroad in delivering stock at their destination was erroneously admitted. 1 Green. Ev., secs. 82, 83, 252, and 405 and notes; Berry v. Cooper, 28 Ga., 540.

3. The opinion of plaintiff as to the value of the horses at Memphis should have been excluded. H. & T. C. Ry. Co. v. Smith, 52 Texas, 178; I. & G. N. R. R. v. Nicholson, 61 Texas, 550.

4. Upon the question of the regulations of the railroad touching the shipment of stock. Neill v. Billingsley, 49 Texas, 161; 1 Green. Ev., sec. 251, 252, 248; 1 Red. on Ry., sec. 37; 2 Red. on Ry., séc. 184 and notes.

5. It was error to exclude the testimony of Fagan that his agreement with defendant was to feed, water, and attend to the stock at his own expense, and that defendant furnished him a free pass in consideration thereof. 1 Green. Ev., secs. 83, 96, 97; Slatterie v. Pooley, 6 M. & W., 664; Loomis v. Wadham, 6 Gray, 557; 49 N. Y., 204.

6. The universal custom of railroads should have been shown. 2 Green. Ev., sec. 251; 2 Red. on Ry., 96–100; 3 Wallace, 107; 22 Wallace, 129; Id., 595; Chevaillier v. Patton, 10 Texas, 344; Goggin v. R. R. Co., 12 Kansas, 416; Ry. Co. v. Hanlin, 52 Ala., 606; Blumenthal v. Brainerd, 38 Vt., 402; 2 Red. Am. Ry. Cases, 175.

7. The court did not give effect to the fact that the mares, being with foal, were in an unportable condition, and that plaintiff was alone cogni-

zable of this fact.    Brandon v. Manufacturing Co., 51 Texas, 121; R. R. Co. v. Le Gierse, 51 Texas, 202; G. H. & S. A. Ry. Co. v. Smith et al., Will. Con. Rep., secs. 138, 483; 6 Wait's Act. and Def., p. 583; Field on Damages, secs. 32, 167–170; Am. Law Reg., vol. 23, no. 12, pp. 762–3; 2 Red. on Ry., sec. 186 and note; Am. Law Reg., vol. 25, no. 8, p. 540; Jacob's Fisher's Dig., vol 2, p. 1592; H. & T. C. Ry. v. Smith, 52 Texas, 178; I. &. G. N. Ry. v. Nicholson, 61 Texas, 550; Shaw v. S. C. Ry., 5 Rich., 462.

8.    On Measure of Damages.    St. L. I. M. & S. Railway v. Leper, 46 Ark., —; McKear v. McIver, 18 L. T. (N. S.), 410; Conger v. Hudson Ry. Co., 6 Duer, 375; M. S. & N. I. Ry. Co. v. McDonough, 21 Mich., 165.

*Cocke, Denman & Franklin,* for appellee, cited Ryan v. M. K. & T. Ry. Co., 65 Texas, 17; M. P. Ry. Co. v. Harris, 67 Texas, 166; W. & W. Civil Cases, sec. 1264; Hutchinson on Carriers, 238.

Collard, Judge. — This suit was brought by appellees, plaintiffs below, against appellant, defendant below, for injuries to and loss of two car loads of horses shipped by plaintiff on defendant's railroad September 21, 1885, from San Antonio, Texas, to Memphis, Tennessee.    The cause was tried by the judge, both on the law and the facts, and judgment rendered for plaintiff for $1800.    Defendant appealed.

The error assigned by appellant upon the ruling of the court in refusing defendant's application for a continuance need not be considered as the case will be reversed on other grounds and as there is no new feature of the law of continuances presented in the application.    The action of the court in overruling defendant's general demurrer to the petition is assigned as error.    No error is pointed out in the assignment, and upon inspection of the petition we fail to discover any that would require a revision of the court's ruling.

The court permitted Fagan to testify, over defendant's objection, that the conductor of the train on which the horses were shipped informed him at what time the train was due at Palestine from San Antonio.    Defendant duly excepted, and assigns the ruling as error because the statement of the conductor was not the best evidence.

It is sufficient for us simply to say that there was no error in the ruling.

It is claimed by appellant that the court erred in permitting witness Fagan to state what the custom of the railroad was in delivering stock at their destination.

It seems the object of the testimony was to show that Jones & Co. held the horses for the railroad company, and that plaintiffs were thus relieved of the care of them while they were in Memphis.    The testimony objected to was as follows:    Fagan testified that "it was customary for railroad

companies to turn over stock at shipping stations and at destination of stock just as his were turned over to J. C. Jones & Co. at Memphis." This evidence was introduced in connection with other statements of Fagan while on the stand, that the horses were not turned over to him on arrival at Memphis; that Jones & Co. took possession of them and put them in their stock yards, and that Jones told him he held them for the railroad for freight charges. The question of fact was, were the horses delivered to Fagan at Memphis? The custom of railroads was invoked to aid plaintiffs' direct proof upon this subject. The question of custom does not seem to be of more than incidental importance in this case. The object of the evidence was not to establish any obligation on the part of the company by proof of a custom, or to show that it was the duty of the carrier, fixed by usage in the course of business, to hold the horses at the place of destination, upon which plaintiffs seek to recover in this action; but the object was to show that because of such usage the stock was not in fact delivered. The fact of delivery or not was susceptible of positive proof, and there was positive proof upon the question. It seems hardly probable that the company would deliver the horses until the freight had been paid, and it is not claimed that they did. However, we may say that to warrant the introduction of usage or custom in the course of trade, it is necessary to show that it is uniform, reasonable, and notorious, and the custom must be established by a witness or witnesses who are experienced in such transactions, and who can testify to the facts constituting the custom. Opinions are not sufficient, nor are reports or reputation. 2 Greenl. Ev., secs. 251–2; Red. on Ry., vol. 2, sec. 184. The evidence objected to does not come up the required standard, so the assignment of error must be sustained.

Appellant says the court erred in "permitting Fagan to give his opinion as to what the stock would have been worth at Memphis if they had not been injured in transportation." Knowledge of the market value of an article is hardly an opinion; it is a fact known from information. If a witness is not fully qualified to state the fact a cross-examination will show it. Such matters go to the weight of the evidence and the credibility of the witness and not to the competency of his testimony. The question here raised as to the correct measure of damages will be noticed hereafter.

The seventh and ninth assignments of errors are to the same effect and are based on the refusal of the court to allow defendant to prove by the witness Michelson that the universal custom of all railroads, and particularly that of defendant, had been at all times and still was not to ship any live stock or receive the same for shipment of any kind whatever:

1. Unless the owner or agent would accompany the stock on the same train, and at his (the shipper's) expense and risk feed and water such stock at the points where it is unloaded for that purpose.

2. Unless the shipper would hold the railway harmless against ordinary delays in taking up freight.

3. Unless the shipper expressly agrees that as a condition precedent to his right to any damages for any loss or injury to his stock during transportation or previous to loading for shipment such shipper will give notice, verified by affidavit, of his claim therefor to some general officer of the railroad company or the nearest station agent, before the stock is removed from the point of shipment or destination and before the stock is mingled with other stock.

4. Unless the shipper agrees that in case of total loss of stock not more than the actual cash value of the same at the place of shipment shall be the measure of damages.

5. Without furnishing the shipper a free pass over the line of shipment, along with the same train, to the place of destination of the stock.

Defendant offered to show that such customs were general and known to plaintiffs, as well as to all shippers of live stock over railroads and specially on defendant's road. The objection made to the evidence was that it would limit the liability of the carrier. It was not objected that these stipulations were set up in the answer as existing in contract between the parties, nor that the proof showed, as it did, that there was a contract containing all the agreements of the parties.

Usages of trade, Mr. Greenleaf says, should be sparingly adopted by the courts as rules of law. "Their true office is to interpret the otherwise intermediate intentions of parties, and to understand the nature and extent of their contracts arising not from express stipulation but from mere implications and presumptions and acts of doubtful and equivocal character; and to fix and explain the meaning of words and expressions of doubtful or various senses." 2 Greenl. Ev., sec. 251. Usages of trade are admissible, however, to show the relative duties and rights of parties as incidents of contracts and transactions; but the usage sought to be invoked must have all the elements of a usage as to certainty, uniformity, notoriety, and reasonableness, and it must not be contrary to law. A usage can not be a good usage if it is contrary to law or public policy. In the case before us, for example, the defendant offered to show a custom of railroads not to receive for transportation any live stock unless under certain conditions modifying their common law liability. Such a custom would be bad because railroads can not legally refuse to ship live stock. A common carrier has no right to demand of a shipper a waiver of his rights as a condition precedent to receiving freight. If such a custom should be ever so common and uniform it could not be sustained because it, the custom, would be against the law.

Let us look at the particulars of the custom proposed in this case. It required the owner to go along on the same train with his stock, to feed and water them at his own risk and expense. The law imposes this duty on the

carrier, and the carrier can not transfer it to the shipper by custom.    The shipper might *agree* to go with his stock and to feed and water them at his own expense, but he could not be compelled to do so by custom because the law requires this duty of the carrier.    This custom also required that the owner of the stock would hold the railroad harmless against ordinary delays in taking up freight.    If the law held the railroad harmless for such delays a custom would not be necessary; if the law held it liable, a custom could not repeal or suspend the law.    It was also required by the custom proposed that the shipper should expressly agree that as condition precedent to his right to any damages for any loss or injury to his stock during transportation he should give notice of his claim therefor, verified by his affidavit, to some general officer of the railroad or to the nearest station agent, before the stock was removed from the point of shipment or destination.    If the shipper should make a contract to give such notice it might be binding under our law if it were shown that there was such officer or agent at the point of destination upon whom the notice could be conveniently served.    The custom in this case did not propose to show that there was such officer or agent at the point of shipment or destination, without which it would be an unreasonable custom.    It would be an unreasonable stipulation in a contract limiting the carrier's liability, and as an express contract, for that reason, it could not be enforced.    Railroad v. Harris, 67 Texas, 166.    But we will not be understood to hold that the custom if it had been shown to be reasonable could be sustained.    A custom can not require that the shipper shall *expressly agree* to a limitation of his right to damages.    The law of the land regulates such matters and fixes liability upon failure to perform duties and obligations of carriers, and when so fixed a custom can not extinguish it or require the injured party to limit it by agreement.

We may say the same of the stipulation in the proposed custom requiring the shipper to agree as a condition to the right to ship his stock on a railroad that in case of total loss of stock the measure of damages should not be more than the cash value of the same at the place of shipment.    Such a custom would be illegal and the carrier could not require that the shipper should make such a special contract.    See R. R. v. Trawick, 68 Texas, 314, in addition to other authorities cited.

Appellant claims that the court erred in sustaining plaintiff's objection to testimony of Fagan, sought to be elicited by defendant while he was being cross-examined, that his agreement was to feed and water the stock and attend them at his own expense.

It is sufficient to say in answer to this assignment that the evidence of Fagan showed that the contract of shipment was in writing; the objection to the evidence was that it was not the best evidence.    The objection was well taken and should have been sustained.

But one other assignment of error need be noticed, as it will dispose of

the rest, which relate to the same subject more or less definitely. The court found as a conclusion of law that the measure of damages was the difference between the market value of the stock in the condition they arrived at destination and their market value had they arrived in good order and condition. This rule for the measure of damages is assigned as error. We agree with the appellant upon this subject.

The court found and the evidence showed that many of the mares shipped were with foal and that they lost their foal on the way, and when they arrived at Memphis they were practically worthless. The most of the cargo were mares.

The railway company was bound to deliver them in a reasonable time and it was bound to exercise due care of the animals while in its possession and while in course of transportation. The correct measure of damages for total loss, there being what is called inherent defect in such freight, and especially so in mares with foal, would be the price, less the freight charges, they would have brought in the market at the place of destination in the condition they would have been in had the company exercised due and necessary care of the same while in its possession, and this price, less freight charges, at the time they should have arrived if shipped and delivered in a reasonable time. In case of partial loss the measure of damages would be the difference in such price, less freights above stated, and the value of the animals at the same place at the time of arrival. Railway Co. v. Harris, *supra*. The company would not be liable for damages resulting from inherent vices and defects in the animals; so if the defendant company performed all its obligations and duties as a public carrier in transporting the animals, and loss or depreciation of price resulted from natural defects, no damages could be had. The principle is, the company would be liable for no injury arising from such defects and the defects must be considered in estimating damages if any arise. The judgment of the court below should be reversed and remanded for a new trial.

*Reversed and remanded.*

Adopted November 27, 1888.