### DAVIS v. SULLIVAN & OPRY.*
(No. 485–3880.)

(Commission of Appeals of Texas, Section A. Feb. 6, 1924.)

1. Carriers ⬤228—216—Extent of liability for negligence in carriage of live stock as affected by inherent vices stated.

Under Rev. St. art. 707, providing that "the duties and liabilities of carriers * * * shall be the same as are prescribed by the common law," while there is excluded from the liability of the carrier all damages arising from the excepted causes—owners' negligence, act of God or the public enemy, and inherent vices and defects in the animals—the carrier is liable to the extent that damages from inherent vices and defects in the animals are aggravated by its failure to perform its duties, or to the extent such damages could have been avoided by the exercise of ordinary care, as live stock, by reason of their peculiar nature, if roughly handled or delayed in transportation, will suffer greater loss and injury as a result of their inherent vices than if handled properly and with dispatch.

2. Carriers ⬤228(1)—Burden of proof in action for injuries to live stock in transit stated.

In view of Rev. St. art. 731, imposing on carriers in intrastate shipments the duty of safe and speedy transportation, in a shipper's action for injury to live stock, the burden of showing that the stock was injured while in the carrier's possession is with the shipper, but when loss or injury happens to live stock in the carrier's possession the burden is on the carrier to exempt itself from liability, the owner or shipper being bound to prove no more than that the stock was delivered to the carrier and failure to deliver it safely.

3. Carriers ⬤228—230(7)—Charge in suit for damage to live stock held not misleading.

Where carriers, sued for damage to shipment of live stock, failed to relieve themselves from the presumption of negligence arising from the shippers' prima facie case, by failing to explain delays causing 90 hours to be consumed in a journey of about 248 miles, held, that the jury could not have been misled by a charge that the carriers would be liable if loss was proximately caused by the fact that they handled the shipment in an "unnecessarily and unusually rough manner" and "failed to transport them in a reasonable time."

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Rehearing denied March 12, 1924.

**4. Appeal and error ☞1064(1)—Charge omitting the element of ordinary care as measure of liability held not prejudicial error.**

In an action for injury to live stock in transit, where unusual delay in transportation was unexplained, it was not prejudicial error to charge that it was the duty of the carrier to transport the cattle in a reasonable time rather than to exercise ordinary care to do so.

**5. Appeal and error ☞1050(1)—Admission of evidence as to reasonable time to unload cattle shipped held harmless error.**

In an action for injury to live stock in transit, where it appeared that 90 hours were consumed in a journey of 248 miles and that at one point there was a delay of 40 hours for no other apparent purpose than for feed, water, and rest, error in permitting a witness over objection to testify that 30 or 40 minutes would have been a reasonable time within which to move the car of cattle 400 to 500 yards and unload them in a pen at the stockyards, *held* not reversible error, since it could not have worked injury to the carrier, in view of the 40-hour delay.

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Action by Sullivan & Opry against James C. Davis. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (242 S. W. 764), and defendant brings error. Affirmed.

B. F. Crosby and B. M. McMahan, both of Greenville, and Thompson, Barwise, Wharton & Hines and F. B. Walker, all of Fort Worth, for plaintiff in error.

Olin P. McWhirter and Thos. W. Thompson, both of Greenville, for defendants in error.

BLANKS, J. This is an ordinary cattle shipment damage suit tried in the district court of Hunt county, submitted to a jury on the general issue, resulting in a verdict and judgment for the plaintiffs in the trial court, and upon appeal the judgment was affirmed by the Court of Civil Appeals of the Sixth District. 242 S. W. 764.

The shipment was an intrastate one from Greenville to Seymour, unaccompanied by a caretaker during the time the loss or injury occurred, and consisted of registered and graded Jersey milch cows intended for sale on the market for such animals at destination.

The Court of Civil Appeals finds that something like 90 hours were consumed in this journey of about 248 miles, several head of cows were killed in the yards at Fort Worth, where the shipment was detained for about 40 hours, for no other apparent or explained purpose than feed, water, and rest, and again detained some 17 hours at Wichita Falls, and the remainder of the cattle were bruised and injured, depreciating their market value at Seymour, and resulting in a loss to defendants in error justifying the amount of the jury's verdict.

In the trial of the case the court charged the jury, in substance, that it was the duty of the carriers to carry the live stock to destination with reasonable promptness and dispatch, and were liable to the shippers for any damages resulting from "delay and injuries from other causes, except such injuries as resulted from the act of the owner, the act of God, or to inherent qualities of the animals themselves," and if the carriers handled the shipment in an "unnecessarily and unusually rough manner," and "failed to transport them in a reasonable time," and loss or injury was sustained as the proximate result thereof, to find for the shippers.

The issue of negligence, or lack of ordinary care, was not otherwise submitted to the jury, although the court's charge was appropriately excepted to for that reason, and a special charge requested to the effect that what was meant in the general charge by the term, "unnecessarily and unusually rough manner," was a lack of ordinary care. Further special charges were also requested defining negligence and ordinary care and making the liability of the carriers dependent in terms thereupon. The exceptions were overruled and the special charges refused. Plaintiff in error also asserts that the charge was too onerous in that it made the duty of the carriers to handle the shipment with promptness and dispatch an absolute one, rather than a duty merely to exercise ordinary care to handle promptly.

In disposing of these issues the Court of Civil Appeals concluded that in the absence of testimony showing any reason why the cattle were detained at Fort Worth more than 40 hours except to unload, feed, and water them, and longer than 17 hours at Wichita Falls, the carriers could not have complained if the trial court had charged the jury outright that the cattle were negligently delayed, and held that, under the facts of the case, the jury could not have been misled to the injury of the carriers, even though as an abstract proposition of law the charge complained of may have been erroneous, which is, however, not conceded by that court.

The determination of the questions presented requires a consideration of the present status of the law in this state on the subject of a common carrier's liability in the handling of intrastate shipments of live stock unaccompanied by a caretaker, the relation of negligence thereto, and the relative burden of establishing its existence or nonexistence.

Some of the Courts of Civil Appeals, in reliance upon the opinions of the Supreme Court in the cases of Ryan v. M., K. & T. Ry.

Co., 65 Tex. 13, 57 Am. Rep. 589, Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 574, G., C. & S. F. Ry. Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494, and other cases of similar import, and article 707, Rev. Stat., and old articles 331a and 331b, defining the liability of connecting carriers, subsequently amended by what now appear as articles 731, 732 of Vernon's Sayles' Civil Statutes, 1922 Supplement, have concluded that in intrastate shipments of live stock, unaccompanied by a caretaker, the carriers are insurers against every character of loss or damage, other than that arising from the negligence of the owner, the act of God, the public enemy, and the inherent vices or natural propensity to deterioration of the animals, and are under an absolute duty to deliver live stock at destination in as good condition as when received for shipment, less such losses or injuries as, without contributing negligence on the carrier's part, arise from the excepted causes above mentioned, and some have gone so far as to imply that the question of negligence, vel non, does not necessarily enter into the consideration of such cases (T. & N. O. Ry. Co. v. Drahn [Tex. Civ. App.] 157 S. W. 282); but it has been held also (Hawkins v. G. & I. Ry. Co., 63 Tex. Civ. App. 543, 135 S. W. 390, and a number of other cases) that the carrier is not an insurer of live stock, and the extent of its responsibility is to exercise ordinary care to safely transport them and deliver at destination in a reasonable time.

While there is considerable contrariety of opinion as to the exact nature of a common carrier's liability in such cases, the text-writer in 10 C. J. § 149, p. 122, says:

"The great weight of authority is to the effect that a carrier who receives live stock for transportation is to be considered a common carrier of that kind of property. Nevertheless its responsibilities as a carrier of live stock are not in all respects the same as those which ordinarily attend a carrier of goods. It 'does not absolutely warrant live freight against the consequences of its own vitality;' and if there is loss or injury due to the peculiar nature and propensities of the animals, the carrier is not liable, unless the loss or injury could have been prevented by the exercise of reasonable foresight, vigilance, and care on its part. The carrier is relieved from liability from such causes, if he has provided suitable means of transportation and exercised the degree of care which the nature of the property requires, or has not otherwise contributed to the injury."

Article 707 of the Revised Statutes, provides that—

"The duties and liabilities of carriers in this state shall be the same as are prescribed by the common law, and the remedies against them shall be the same," etc.

Referring to this provision of the statute and defining what this common-law liability was, it was settled in the case of Ryan v. M., K. & T. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589, and Mo. P. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785, with reference to inanimate freight that the carriers were insurers, except as against the negligence of the owners, the act of God, or the public enemy, and following the Ryan Case, in the cases of Railway Co. v. Harris, 67 Tex. 166, 2 S. W. 574, and G., C. & S. F. Ry. Co. v. Trawick, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494, by Justice Stayton, this liability was extended to embrace live stock shipments, the court stating, however, that "from the necessity and justice of the case," the law had introduced an additional "exception in favor of the carrier of live stock" relieving it "of accountability for its loss or injury resulting from its own uncontrollable vicious propensities. and the damages incident to its carriage from its inherent natural character."

In the case of G., C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. 191, 8 L. R. A. 323, 18 Am. St. Rep. 45, an opinion also by Justice Stayton, involving a claim of damage arising from delay of a car of lemons, where the defense was that the shipment sustained the loss on account of its perishable nature, the carrier asserting that it had exercised ordinary care in handling the shipment, it was said:

"For failure to carry and deliver, the carrier cannot excuse himself by reason of the fact that, through human agency, not under his control, this was prevented without fault on his part; but if the property be wholly lost or partially decayed through some inherent quality, without fault on the part of the carrier, this will excuse the failure safely to carry and deliver, for the operation of the laws of nature, working destruction or loss, furnish the same excuse as do tempest, lightning, or other cause termed the 'act of God.' "

And after quoting from one of Lord Mansfield's decisions, Forward v. Pittard, 1 Term Reports, 27, and Chief Justice Best in Railway v. Horne, 5 Bingham, 550, to show that the reasons upon which were based the rule of common-law liability of carriers were to prevent collusion between the carrier and third persons to appropriate the goods, and to relieve the shipper of the necessity of proof of how the loss occurred when the facts were peculiarly within the knowledge of the carrier, said:

"The same reasons do not apply when the thing is actually transported and delivered, although when delivered it may be greatly diminished in value by a fall in the market price, or its value partially or entirely destroyed by reason of its inherent perishable nature, which has worked its partial or entire destruction while in transit."

And then, quoting Hutchinson on Carriers, sec. 330:

"But the reasons upon which the extraordinary responsibility of the common carrier for the safety of the goods is founded do not require that the same responsibility should be extended to the time occupied in their transportation. The danger of loss by robbery or embezzlement, or theft by collusion and fraud on his part, has no application when the mere time of the carriage is concerned. 'His first duty,' it is said, 'is to carry the goods safely, and the second to deliver them; and it would be very hard to oblige a carrier, in case of any obstruction, to risk the safety of the goods in order to prevent delay. His duty is to deliver the goods within a reasonable time, which is a term implied by the law in the contract to deliver; as Tindal, C. J., puts it, when he says: "the duty to deliver within a reasonable time being merely a term ingrafted by legal implication upon the promise or duty to deliver generally."' In this respect, therefore, the common carrier stands upon the same ground with other bailees, and may excuse delay in delivery of the goods by accident or misfortune, although not inevitable or produced by the act of God. All that can be required of him in such an emergency is that he shall exercise due care and diligence to guard against the delay, and that, if it occur without his fault or negligence, he shall omit no reasonable efforts to secure the safety of the goods."

The only basis for damage in that case was the unusual delay in the shipment, and the final conclusion of the learned justice rendering the opinion was:

"To the extent the fruit may have deteriorated, on account of its perishable nature, while in transit, the facts pleaded would furnish a defense, if defendant bestowed upon it proper care; for in such case such a loss would be attributed solely to the decay which the answer excuses."

Similarly in G., C. & S. F. Ry. Co. v. Gatewood, 79 Tex. 89, 14 S. W. 913, 10 L. R. A. 419, a live stock shipment case, Justice Acker, after referring to the origin of the rule of common-law liability, concludes in effect that where the defense raises the issue of one of the excepted causes being responsible for the loss or damage, and therefore beyond the control of the carrier, the test of liability necessarily is negligence.

That this has been the consistent view of the Supreme Court is made apparent by a reference to quite a number of cases. G., C. & S. F. Ry. Co. v. Ellison, 70 Tex. 491, 7 S. W. 785; Mo. P. Ry. Co. v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776, in which latter case the court says:

"The company, [carrier], would not be liable for damages resulting from inherent vices and defects in the animals; so if the defendant company performed all its obligations and duties as a public carrier in transporting the animals, and loss or depreciation of price resulted from natural defects, no damages could be had."

[1] While, as indicated by the foregoing decisions, the issue of liability of the carrier at common law is related necessarily to its duty as such carrier, yet liability and duty, which are the two things referred to and covered by article 707, are not the same.

There is excluded from the liability of the carrier, as stated, all damages arising from the excepted causes. It is not liable for them in any event. It is, however, liable to the extent such damages are aggravated by its failure to perform its duties, or to the extent such damages could have been avoided by the exercise of such diligence and foresight as under the circumstances would have amounted to ordinary care, and it is just in that relation that the issue of negligence vel non arises. Live stock, by reason of their peculiar nature, if roughly handled or delayed in transportation, will suffer greater loss and injury than if handled with dispatch and in the manner the shipment requires in order to deliver it at destination with only the natural and necessarily incidental loss arising from what is usually referred to as the "inherent vices" of the shipment, when handled with ordinary care.

Much of the difficulty, leading to the suggestion in live stock shipment cases, on the one hand that the question of negligence, vel non, does not enter into the case, and on the other hand that the responsibility of the carrier is only to exercise ordinary care, arises from a failure to differentiate between those cases where the carrier, through destruction of the cattle from some cause other than the excepted ones, fails to deliver them at all, and is therefore absolutely liable as an insurer, and the great majority of cases where the issue usually is whether the losses and injuries have resulted from one or more of the excepted causes, and were therefore unavoidable, or occurred from, or were aggravated by, a failure of the carrier to perform its public duties in transportation.

In Kentucky, the same rule of liability exists as in Texas, and on this particular question it is said in the leading and frequently cited cases of Stiles v. L. & N. Ry. Co., 129 Ky. 175, 110 S. W. 820, 18 L. R. A. (N. S.) 86, 130 Am. St. Rep. 429:

"In Cleveland, C., C. & St. L. Ry. Co. v. Druien, 118 Ky. 237, 80 S. W. 778, 66 L. R. A. 275, in discussing the loss of live stock by fire, we said: 'At the common law, which obtains in Illinois, as well as in this state, a common carrier is liable for loss of freight in its charge occurring by fire, whether or not caused by its own negligence; its liability being that of an insurer.'

"The cases cited by the appellee in support of the judgment of the court are not apposite to the question before us. They are cases where the stock was killed or injured by reason of its inherent propensity, and the loss may be said to have resulted from the infirmity or vice of the animals; and while the court, perhaps, used general language in regard to the negligence or nonnegligence of the carrier, which, if disassociated from the particular loss that

was being discussed, might seem to modify the general rule, yet it was clearly not the intention of the court so to do. Undoubtedly, where the result may have arisen from the natural infirmity or vice of the animal, then the question of the negligence or care of the carrier arises."

If the carrier has exercised that degree of diligence and foresight in the transportation of live animals as under the particular circumstances of the shipment constitutes ordinary care, and still they are delivered in a damaged condition, the damage sustained would be attributed alone to the inherent vices of the animals, where that is the issue. Or, in other words, the exclusion from the carrier's liability of such loss and injury as does not arise from, or is not contributed to by, its negligence, merely leaves the shipper without compensation for the loss and damage which, theoretically at least, his cattle would anyhow have sustained on account of their inherent nature, and for which the carrier is not liable in any event. G., C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. 191, 8 L. R. A. 323, 18 Am. St. Rep. 45.

But it has been definitely and uniformly held by the Supreme Court that when a shipper shows delivery to, and acceptance by, a carrier of freight for shipment, and its nondelivery at destination, negligence is presumed to a sufficient extent that the plaintiff is said to have made out a prima facie case. Ryan v. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589; Mo. Pac. Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785. And, with respect to live stock shipments, unaccompanied by a caretaker, it is practically the universal holding that when the shipper shows delivery in a given condition, and its redelivery with losses and injuries, it is for the carrier to prove the injuries were due to one or more of the excepted causes, if it wishes to avoid liability on that ground. Church v. C., B. & Q. Ry. Co., 81 Neb. 615, 116 N. W. 520, and many authorities collated in note, p. 93; 18 L. R. A. (N. S.) to Stiles v. L. & N. Ry. Co., 129 Ky. 175, 110 S. W. 820, 18 L. R. A. (N. S.) 86, 130 Am. St. Rep. 429.

The same rule is adopted in the leading case of Boehl v. C., M. & St. P. Ry. Co., 44 Minn. 191, 46 N. W. 333; Yazoo & Miss. Val. Ry. Co. v. Bell, 111 Miss. 82, 70 South. 272, and by our own Courts of Civil Appeals. in Ry. Co. v. Montgomery, 141 S. W. 813. Ry. Co. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1154; A., T. & S. F. Ry. Co. v. Word, 159 S. W. 375 (writ of error refused); T. & P. Ry. Co. v. Martin, 175 S. W. 707.

In 4 R. C. L. arts. 460, 461, pp. 993, 994, it is said:

"In an action against a carrier by a shipper to recover damages for loss or injury to live stock the burden of showing that the stock was injured while in the possession of the carrier is

with the shipper. But when a loss or injury happens to live stock in the possession of a carrier for transportation the burden of proof rests on the carrier to exempt himself from liability; for the law imposes on him the obligation of safety. The owner or shipper is bound to prove no more than that the stock were delivered to the carrier, and the failure to deliver them safely. These facts are prima facie evidence of negligence or misconduct,"

—and many authorities are cited in support of the text.

[2] The foregoing would necessarily be the rule in Texas, when the language of article 731, Rev. Stat., imposing upon carriers in intrastate shipments the duty of "safe and speedy" transportation of all freight, is considered.

In the case of M., K. & T. Ry. Co. v. Grain Co., 103 Tex. 542, 131 S. W. 410, it was said by Justice Williams:

"But where a delay out of the ordinary course has occurred which the carrier seeks to excuse by showing the existence of unusual conditions, it assumes the affirmative and must by its pleading and evidence show every fact essential to the legal validity of its excuse."

And, in Ft. W. & D. C. Ry. Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834, in discussing this question, it was stated by the Supreme Court, citing Boehl v. Railway, 44 Minn. 191, 46 N. W. 334, that the burden was upon the carrier "to prove that the cattle were injured by their inherent viciousness and disposition to hurt each other."

In the instant case there was no pleading by the carriers excusatory of the delay, other than as their general denials implied, but by special answers the losses in and injuries to the cattle were attributed to their impoverished, wild, and unruly condition at time of shipment and overcrowding in the car. The jury was instructed in this case that the shippers could not recover if the cattle were overcrowded in the cars, but the verdict resolved this issue against the carriers. When the shippers proved delivery to, and acceptance by, the originating carrier of the cattle, and losses and injuries at destination, a prima facie case was made out such that to relieve themselves of liability the affirmative was on the carriers, to show such losses and injuries to have occurred from some of the excepted causes. They could have met or rebutted the prima facie case so made out by showing that they exercised such diligence and foresight in the handling of the cattle as amounted to ordinary care, or that the injuries arose from the negligence of the shippers in overcrowding their cattle in the car.

[3] Whether or not "unnecessary rough handling" or "unusual delays" necessarily imply or mean the same thing, from a purely

technical aspect as negligence, although, in the well-reasoned case of St. L. & S. F. Ry. Co. v. Franklin, 58 Tex. Civ. App. 41, 123 S. W. 1150, a decision by Justice Talbot of the Dallas Court of Civil Appeals, in which writ of error was denied by the Supreme Court, the identical question was decided against plaintiffs in error's contention here, the carriers, at least, failed to relieve themselves from the presumption of negligence arising from the shippers' prima facie case, when they failed to explain the delays referred to, and the language of the charge could not therefore have misled the jury under the facts of this case.

[4] Referring to the final proposition presented by plaintiffs in error to the effect that the trial court erred in charging the jury that it was the duty of the carriers to transport the cattle in a reasonable time, rather than to exercise ordinary care to do so, the identical question was presented in the case of T. & P. Ry. Co. v. Sherrod, 87 S. W. 363, and it was held by the Fort Worth Court of Civil Appeals, in a case of this character where the delay in transportation was unexplained, that the charge, if erroneous, was an immaterial error. A writ of error was granted. and the decision of that court was affirmed, 99 Tex. 382, 89 S. W. 956, Chief Justice Gaines stating:

"In our opinion the particular language in the charge of which complaint is made was in no manner calculated to mislead the jury to the prejudice of the plaintiff in error,"

—and so we hold here.

[5] A witness was permitted over objection of the carriers to testify that 30 or 40 minutes would have been "a reasonable time" within which to move the car of cattle 400 to 500 yards and unload them in a pen at the stockyards. Under the rule announced in the case of Railway Co. v. Roberts, 101 Tex. 418, 108 S. W. 808, it is an invasion of the province of the jury to admit such testimony, but in this case it would not constitute reversible error, because the cattle were in the Fort Worth yards 40 hours, and the testimony, even if erroneously admitted, could not have worked, as a practical proposition, to the injury of the carriers. Ft. W. & D. C. Ry. Co. v. Greathouse, 82 Tex. 104, 17 S. W. 834.

While not subscribing to all the reasoning of the Court of Civil Appeals, we are of the opinion that court reached the correct conclusion in this case, and recommend an affirmance of the judgment.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.