## PANHANDLE & S. F. RY. CO. v. KEY et al.
### (No. 3274.)

Court of Civil Appeals of Texas. Amarillo.
Sept. 25, 1929.

Terry, Cavin & Mills, of Galveston, Madden, Adkins & Pipkin, of Amarillo, and Wilson, Randal & Kilpatrick, of Lubbock, for appellant.

HALL, C. J. L. E. Key and J. W. Horn sued the appellant railway company to recover damages alleged to have resulted to a shipment of horses and mules owned by the plaintiffs; said live stock being shipped from Texhoma, Tex., to Littlefield.

The substance of the petition is that the plaintiffs were the owners of 27 ordinary horses and mules on the 22d day of February, 1928, and on that date delivered said live stock to the Chicago, Rock Island & Gulf Railway Company, at Texhoma, Tex., for transportation over the lines of the Chicago, Rock Island & Gulf Railway, from Texhoma, Tex., to Dalhart, thence over the Ft. Worth & Denver City Railway, to Amarillo, and from Amarillo to Littlefield over the lines of the defendant; that the shipment of live stock was delivered to the defendant company at Amarillo in good condition, but were care-

lessly and negligently handled, were reloaded into one of defendant's cars with a double deck over the heads of the animals, against which they struck their heads, greatly damaging them; that one horse was down when the car arrived at Littlefield, and died soon after; that the other animals were badly bruised and skinned about their heads and eyes, and otherwise skinned and bruised; that the animal which died from its injuries at Littlefield was of the reasonable market value of $100, and that the remainder of the animals in said shipment were damaged in the reasonable sum of $700.

The defendant answered that the shipment originated at Texhoma, Okl., and not at Texhoma, Tex.; that the plaintiffs agreed to and did load the animals into the car furnished by the initial carrier, and in doing so negligently overloaded the car, and that the injuries, if any, were the result of such overloading; that the shipment consisted of 18 horses and 9 mules, which plaintiffs had purchased in and around Texhoma; that the stock were strangers to each other, not having been kept or penned together for sufficient length of time to become acquainted; that they had a tendency to fight and kick one another, and were caused to do so by the overloading; that the animals had injured each other at the time the car reached Dalhart, and that it was necessary to unload and reload them into a larger car at Dalhart; that the Fort Worth & Denver City Railway Company, transported the shipment with reasonable care and speed to Amarillo, where the said animals were delivered to the defendant company in a skinned, bruised, and damaged condition, due to their having been overloaded, and having fought, kicked, and otherwise injured each other.

The case was submitted to the jury upon special issues, and resulted in a verdict and judgment in plaintiff's favor in the sum of $325. The appellees have not favored us with a brief.

Plaintiffs sought to recover upon the common-law liability of the carrier, and in defense the carrier set up certain stipulations of the contract of shipment, which will be hereinafter referred to.

By special issue No. 3, the court inquired of the jury: "What sum of money, if paid at this time, will reasonably and fairly compensate plaintiffs for the damage to their live stock? Answer in dollars and cents."

In connection with the above special issue, the Court instructed the jury to "take into consideration the difference in the reasonable market value of said live stock at Littlefield, Tex., at the time received there had said live-stock been handled and shipped with the usual and customary dispatch, care, and diligence incident to the shipment of live stock, if you find from the evidence they were not so shipped and handled, and the reasonable market value of the live stock in the condition actually delivered at Littlefield."

We think this explanation is substantially correct. As a basis for ascertaining the amount of damages, the jury are instructed to take into consideration the market values of the animals at Littlefield, Tex., the destination. It is true that one of the plaintiffs testified that in estimating his damages he took into consideration $50 attorney's fees, fees paid the veterinary, and amounts paid on feed bills. The answer of the jury to this question could not reasonably have included these items, because the issue submitted inquires as to the amount of damages to the live stock.

By its second proposition, the appellant complains of the court's failure to submit special issues Nos. 3 and 4, requested by defendant, as follows:

(3) "Were the plaintiffs guilty of negligence in loading and shipping these horses and mules in a car together?"

(4) "If you have answered defendant's requested special issue No. 3 that the plaintiffs were guilty of negligence in loading and shipping these horses and mules in a car together, then was such negligence the proximate cause of the injury complained of?"

In our opinion, the court did not err in refusing to submit these issues. It is true that there is testimony to the effect that, where animals are loaded and shipped in the same car "which are strangers to each other, they are more inclined to fight and kick each other than animals that have been together for a long time." We are not willing to agree to the contention that the shipment of 18 horses and 9 mules who were "strangers," in the same car with the consent of plaintiffs, amounted to contributory negligence on the part of plaintiffs, unless it were shown that the shipper knew that the animals were vicious, and had reason to believe that they would fight, because they were unacquainted. It would be an unreasonable rule which would require one engaged in the business of buying and shipping animals to market for sale to keep his purchases penned together until they learned to love each other to the extent that they would not kick when provoked. Such a rule would probably end the business of shipping mules.

We think the issue is one of negligence. Under the common-law rule, the carrier is not responsible for injuries to animals in cases like this resulting from their natural propensities or inherent vices. R. S. art. 882, provides that the "duties and liabilities of carriers in this state and the remedies against them, shall be the same as are prescribed by the common law except where otherwise provided by this title."

In Texas & Pacific Ry. Co. v. Snyder (Tex. Civ. App.) 86 S. W. 1041, 1042, Neill, Justice, said: "In the transportation of livestock, in

the absence of negligence, the carrier is relieved from responsibility for such injuries as occur from or in consequence of the vitality of the freight. Animals may injure or destroy themselves or each other, they may die from fright or starvation, or they may die from heat or cold. In all such cases the carrier is relieved from responsibility if he can show that he has provided all suitable means for transportation, and exercised that degree of care which the nature of the property requires."

In discussing the above-quoted statute, Blanks, Justice, in Davis v. Sullivan & Opry (Tex. Com. App.) 258 S. W. 157, 160, held that the effect of the statute was to exclude from the liability of the carrier all damages arising from the excepted causes under the common law, and that the carrier was not liable for such damages in any event, and proceeded as follows:

"It is, however, liable to the extent such damages are aggravated by its failure to perform its duties, or to the extent such damages could have been avoided by the exercise of such diligence and foresight as under the circumstances would have amounted to ordinary care, and it is just in that relation that the issue of negligence vel non arises. Livestock, by reason of their peculiar nature, if roughly handled or delayed in transportation, will suffer greater loss and injury than if handled with dispatch and in the manner the shipment requires in order to deliver it at destination with only the natural and necessarily incidental loss arising from what is usually referred to as- the 'inherent vices' of the shipment, when handled with ordinary care. * * * If the carrier has exercised that degree of diligence and foresight in the transportation of live animals as under the particular circumstances of the shipment constitutes ordinary care, and still they are delivered in a damaged condition, the damage sustained would be attributed alone to the inherent vices of the animals, where that is the issue. Or, in other words, the exclusion from the carrier's liability of such loss and injury as does not arise from, or is not contributed to by, its negligence, merely leaves the shipper without compensation for the loss and damage which, theoretically at least, his cattle would anyhow have sustained on account of their inherent nature, and for which the carrier is not liable in any event."

Appellant cites no authorities to the contrary and we have found none.

■ The first special issue submitted to the jury is: "Were the plaintiffs' horses and mules injured and damaged as alleged in their petition by reason of the negligence of the defendant railway company?" The appellant insists, in connection with this issue, that it is not complete within itself, "in that it refers to plaintiffs' petition which sets up various and sundry charges of negligence and did not confine the jury to a consideration of each separate allegation of negligence on the part of the defendant and was duplicitous in that respect."

As we construe this issue, the inquiry was with reference to the bruises, skinned places, and injuries described, and not with reference to the issue of negligence. The record shows that no caretaker accompanied the shipment, and, "with respect to live stock shipments, unaccompanied by a caretaker, it is practically the universal holding that when the shipper shows delivery in a given condition, and its redelivery with losses and injuries, it is for the carrier to prove the injuries were due to one or more of the excepted causes, if it wishes to avoid liability on that ground." Davis v. Sullivan & Opry, supra.

In the instant case, the evidence shows that the animals were delivered to the Chicago, Rock Island & Gulf Railway, at Texhoma, Tex., in good condition, and that they reached Littlefield in a damaged condition. Negligence of the carrier is presumed in such cases, and the burden rests upon the carrier to show that the damages resulted from one of the excepted causes, which will relieve it of liability. There seems to be no denial of the fact that the animals were damaged to the extent and in the particulars described by the witnesses. The charge is not subject to the criticism urged.

■ In response to the sixth special issue requested by the appellant, the jury found that the injuries were contributed to by reason of the nature and disposition of the animals. The jury further found that the appellant was guilty of negligence, that it did not transport the shipment with reasonable care and dispatch, and that plaintiffs were damaged in the sum of $325. While the jury also found that the nature and disposition of the stock did not cause the injury, it further found that their nature and disposition contributed to the damage. It is contended in this connection that the court erred in failing to define proximate cause, and to submit to the jury the issue inquiring the extent of the damages caused by the inherent vice of the animals, and it is further insisted in this connection that there is a conflict between the finding that the animals were damaged by reason of the negligence of the defendant, and the further finding that the nature and disposition of the animals contributed to the alleged injury. We think that the finding of the jury that the injuries were contributed to by the nature and disposition of the animals, and the further finding that the nature and disposition of the animals did not cause the injuries, are clearly conflicting.

■ While, as stated above, there is a presumption of negligence where no caretaker accompanies the shipment, and the evidence shows that the animals were in good condition when delivered to the carrier, and

reached their destination in a damaged condition, this presumption does not obtain where the plaintiff alleges specific acts of negligence. Where, in such cases, plaintiff undertakes to specify the acts of negligence resulting in the injuries complained of, the burden rests upon him to prove the negligence as alleged. Hines v. Whiteman (Tex. Civ. App.) 228 S. W. 979. In such cases the duty rested upon the court to define and explain proximate cause, because negligence of the carrier would not be ground for recovery, unless such negligence was the proximate cause of the injury. For these reasons, the judgment must be reversed, and the cause remanded.

Appellant does not assign error in the court's charge with reference to the measure of damages, because it failed to instruct the jury to exclude such damages as may have resulted from the inherent vices and natural disposition of the live stock. There was no finding of the jury to what extent the animals were damaged because of inherent vices. In view of another trial, we call the attention of the court and counsel to these matters.

Reversed and remanded.